**2014 UT App 205**

# THE UTAH COURT OF APPEALS

SUSAN NELSON,
Plaintiff and Appellant,
*v.*
TARGET CORPORATION,
Defendant and Appellee.

Opinion
No. 20121059-CA
Filed August 28, 2014

Third District Court, Salt Lake Department
The Honorable Royal I. Hansen
No. 110908898

Lincoln W. Hobbs and Sarah H. Orme, Attorneys
for Appellant

Robert O. Rice and Liesel B. Stevens, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE GREGORY K. ORME and SENIOR JUDGE PAMELA T. GREENWOOD concurred.[1]

ROTH, Judge:

¶1     This case involves several claims arising from Target Corporation's decision to terminate its employment of Susan Nelson for taking a customer's wallet. Nelson sued Target for breach of contract, negligent and intentional infliction of

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

emotional distress, and defamation. Each claim hinged in part on Nelson's assertion that Target conducted a deficient investigation, basing its decision to terminate her solely on video surveillance footage of the incident. The district court granted Target summary judgment on each claim. It concluded that Nelson was an at-will employee who could be terminated for any reason, that Nelson had failed to identify any outrageous behavior during the investigation that caused her emotional distress, and that any alleged defamatory statements made during the investigation were shielded by a conditional privilege. The court also denied Nelson's rule 56(f) motion for additional discovery and her request to add a claim for breach of the covenant of good faith and fair dealing. We affirm.

BACKGROUND

¶2    Nelson began working at a Target retail store in Orem, Utah, in January 1997. When she was hired, Nelson signed an acknowledgment form confirming that she had read Target's team member handbook (the handbook). According to the handbook, each new employee had a ninety-day learning period:

> The first 90 days are when you learn your responsibilities and get acquainted with your fellow team members. It's a chance for you and Target to see whether we make a good fit, whether you're happy with your job and if your Team Leader is happy with your performance. If not, either you or Target may decide your employment shouldn't continue beyond this 90-day learning period.

¶3    But the handbook also stated that all Target employees "are 'at-will' team members, which means that team members can terminate the employment relationship at any time, for any or no reason," and "Target reserves the same right." The

handbook instructed employees that they "should not . . . interpret any verbal or written statement, policies, practices or procedures, including this handbook, as altering their 'at-will' status." And the handbook further provided that it was "not a contract" and "doesn't guarantee . . . employment for any particular length of time, or limit how employment may end."

¶4 Nelson was fired on February 25, 2011, after Target security officers determined that she took a customer's wallet. The customer had contacted Target's security department on February 18 to report that her wallet was missing and that she may have left it at a checkout lane after paying for her groceries. Target's security team reviewed the store's video surveillance footage to determine what had happened. Video footage from a checkout location showed Nelson putting the customer's wallet in her purse. In the video, Nelson, who was shopping after her shift ended that day, takes her own wallet out of her purse to pay for groceries. Nelson notices another wallet a previous customer apparently left at the checkout stand near the credit card reader, glances at the cashier as the cashier turns away, picks up the customer's wallet with her right hand while her own wallet is still in her left, and quickly places it in her purse, which is in the shopping cart next to her. Nelson then finishes paying for her groceries with her own wallet still in her hand, puts her wallet back in her purse on top of the customer's wallet, and leaves the store.

¶5 A Target security officer called Nelson at home after reviewing the video. Nelson confirmed that she had the wallet, and the security officer asked her to return it. The officer stated in a deposition that Nelson seemed surprised by his question and returned the wallet within ten minutes. Nelson claimed that she put the wallet in her purse because she mistook it for her own.

¶6 Jason Turner, Target's store security chief, investigated the wallet incident. He interviewed the security officer and

viewed several store surveillance videos of the event. After reviewing "the video over and over and over again to eliminate any of the possibilities that it could have been an accident," Turner concluded that there was "no way" Nelson could have taken the wallet by mistake.

¶7    Turner interviewed Nelson about the incident on February 25, 2011. As required by company policy, a human resources representative was also present at the interview. After some initial questioning, Turner left the room to allow Nelson time to complete a written statement explaining why she took the wallet. Nelson wrote that she took the wallet inadvertently and did not realize she had it until she went home. Turner returned, reviewed Nelson's statement, listened to Nelson explain her version of the incident, and told Nelson he did not believe her. After Nelson refused to amend her written statement, Turner left the room and returned with a supervisor who informed Nelson that Target was dismissing her.

¶8    In April 2011, Nelson sued Target for breach of contract, negligent and intentional infliction of emotional distress, and defamation. In the complaint, Nelson alleged that "she inadvertently picked up a wallet, resembling her own," and "immediately returned" it when she realized her mistake. She further alleged that Turner "interrogated [her] at length and repeatedly accused [her] of being dishonest" even though he knew or should have known that Nelson was telling the truth. Nelson claimed that Turner's questioning caused her "to suffer emotional distress," that Turner "communicated to third persons . . . information that was untruthful and harmful to [Nelson's] business reputation," and that Target "violated the express and implicit terms of [Nelson's] contract of employment that she would be treated fairly in connection with her termination."

¶9    Target moved for summary judgment on all of Nelson's claims. Nelson opposed the motion, filed a rule 56(f) motion requesting leave to depose two additional witnesses, and moved

to amend her complaint to add a claim for breach of the covenant of good faith and fair dealing. The court granted Target's motion for summary judgment on each claim. The court observed that the handbook "explicitly includes an at-will disclaimer" and that Nelson had not identified any "specific manifestation of an intent to change the terms of her at-will employment." With respect to the emotional distress claim, the court concluded that "the facts do not demonstrate any conduct by [Target], or [its] agent, Mr. Turner, so outrageous and intolerable that it would offend accepted standards of morality and decency." Finally, the court determined that any allegedly defamatory statements were shielded by a "conditional privilege" that applied while Target conducted its internal investigation of the wallet's disappearance and that Nelson could not demonstrate that Target abused that privilege.

¶10 The district court also denied Nelson's rule 56(f) motion because "there was adequate time to conduct the discovery sought during the discovery period" and "Nelson has failed to show that the additional discovery sought would uncover disputed material facts." Finally, the court denied Nelson's motion to amend, concluding that the "amendment would be futile because the covenant of good faith and fair dealing cannot be construed to change an indefinite-term, at-will employment contract into a contract that requires an employer to have good cause to justify a discharge." (Citation and internal quotation marks omitted.)

ISSUES AND STANDARDS OF REVIEW

¶11 Nelson raises three issues on appeal. First, she argues that the district court improperly granted Target's motion for summary judgment because "factual issues existed" on each of her claims. We review the district court's decision to grant or deny summary judgment for correctness, viewing "the facts and all reasonable inferences drawn therefrom in the light most

favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted).

¶12 Second, Nelson argues that her motion to amend should have been granted because her proposed claim for breach of the covenant of good faith and fair dealing "would have withstood a motion to dismiss." "Whether to grant or deny a motion to amend is a matter within the broad discretion of the trial court and we [will not] disturb its ruling unless [the appealing party] establishes an abuse of discretion resulting in prejudice." *Pride Stables v. Homestead Golf Club, Inc.*, 2003 UT App 411, ¶ 11, 82 P.3d 198 (alterations in original) (citation and internal quotation marks omitted). Here, however, the district court denied Nelson's motion to amend as futile, concluding that the proposed amendment would not survive a motion to dismiss. "Whether a claim can withstand a motion to dismiss is a question of law, and we therefore review the trial court's underlying determination regarding the legal sufficiency of the claim for correctness." *Shah v. Intermountain Healthcare, Inc.*, 2013 UT App 261, ¶ 6, 314 P.3d 1079.

¶13 Finally, Nelson contends that the court "abused its discretion by denying [her] rule 56(f) motion for additional time to complete discovery." We review the decision to deny a rule 56(f) motion for "an abuse of discretion," and we will not disturb the district court's ruling unless "the denial of the motion exceed[s] the limits of reasonability." *Petersen v. Riverton City*, 2010 UT 58, ¶ 25, 243 P.3d 1261 (alteration in original) (citation and internal quotation marks omitted).

ANALYSIS

¶14 We conclude that the district court correctly determined that Target was entitled to summary judgment on each of Nelson's claims. We also conclude that the motion to amend was

futile and that the court did not abuse its discretion when it denied Nelson's rule 56(f) motion.

## I. Summary Judgment

¶15   Nelson challenges the district court's decision to grant Target's motion for summary judgment on her claims for breach of contract, intentional infliction of emotional distress,[2] and defamation. "Summary judgment is proper where 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 25, 284 P.3d 630 (omission in original) (quoting Utah R. Civ. P. 56(c)). "Generally, the party moving for summary judgment must make an initial showing that he is entitled to judgment and that there is no genuine issue of material fact that would preclude summary judgment in his favor." *Id.* ¶ 29. Once that showing is made, "the burden . . . shifts to the nonmoving party to show that there is a genuine issue of material fact or a deficiency with the moving party's legal theory that would preclude summary judgment." *Id.* We agree with the district court that Nelson failed to meet her burden on each of her three claims.

---

2. In her complaint, Nelson alleged both intentional and negligent infliction of emotional distress, which are distinct claims with different elements. *See Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 57, 116 P.3d 323 ("Unlike a claim for intentional infliction of emotional distress, a claim for negligent infliction of emotional distress does not require proof of outrageous conduct."). But on appeal, Nelson does not argue that the court improperly dismissed her negligent infliction claim, so we do not address it.

A.      Breach of Contract

¶16    With respect to the breach of contract claim, Nelson argues that "Target's handbook, as well as its counseling and corrective action policies, create ambiguities in Target's employment policies which raise a factual question as to whether Nelson's employment was, in fact, at will." Specifically, she points to the "90-day learning period" outlined in the handbook and three other paragraphs that she argues create an "implied-in-fact" employment contract.[3] According to Nelson, page six of the handbook states, "[W]e treat each other with respect so our guests always get a good feeling when they show up at Target." And page twenty-three describes an "Open Door Policy," which expresses Target's belief "in two-way communication and fair dealing." It further instructs employees to "ask [their] Team Leader" if they have "any questions or difficulties on the job" and assures that the "door is always open to [employees] and what [they] have to say.'" Nelson also claims that the handbook describes Target's "counseling and corrective action policies," where "[v]arious matters are set forth . . . for which employees can be terminated immediately, others for which they are to be counseled, and for which they get a final warning." Finally, Nelson cites her own deposition testimony that she believed that "if [she] was a good employee and did the work that [she] was supposed to do, then [she] would remain employed at Target." Nelson does not allege that Target management made any verbal statements altering her at-will employment status. After carefully reviewing all the pertinent evidence in the record, we conclude that the district court did not err in concluding as a matter of law that Nelson was an at-will employee and that Target did not breach any contractual obligation in terminating her employment.

---

3. None of the handbook sections Nelson cites are in the record. In fact, the only handbook provision in the record is the at-will

(continued...)

¶17    Utah law presumes "that all employment relationships entered into for an indefinite period of time are at-will, which means that an employer may terminate the employment for any reason (or no reason) except where prohibited by law." *Tomlinson v. NCR Corp.*, 2013 UT App 26, ¶ 29, 296 P.3d 760 (citation and internal quotation marks omitted), *cert. granted*, 304 P.3d 469 (Utah 2013). An employee can overcome that presumption with "proof that the parties entered into an implied or express agreement that the employment may be terminated only for cause or upon satisfaction of another agreed-upon condition." *Id.* (citation and internal quotation marks omitted). "Relevant evidence of the intent" to enter into such an agreement "usually includes the language of the [employee] manual itself, the employer's course of conduct, and pertinent oral representations." *Id.* ¶ 33 (citation and internal quotation marks omitted). In *Tomlinson*, we concluded that there was a factual dispute about whether the plaintiff—who claimed to be a "full-time, core employee"—was an at-will employee. *Id.* ¶ 36. We noted that even though the company's employee manual "expressly designate[d]" two classes of its employees "as terminable at-will," the manual did "not include an at-will statement directed at full-time, core employees." *Id.* We also observed that despite the manual's disclaimer that employee disciplinary guidelines "are not intended to be contractual in

---

disclaimer that Target submitted in support of its motion for summary judgment. The breach of contract claim therefore may not have survived summary judgment based on Nelson's failure to support it with admissible evidence. *See Poteet v. White*, 2006 UT 63, ¶ 7, 147 P.3d 439 ("If a motion for summary judgment is supported by [admissible evidence in the record], in order to raise a dispute of fact, a nonmoving party must use evidence from these same types of sources."). We will nevertheless assume that the handbook contains these sections because Target has not disputed that they exist.

nature," the disclaimer did "not specifically state that employment . . . [was] 'at-will.'" *Id.* ¶ 44.

¶18 Here, the ninety-day learning period for new employees and other provisions of the handbook are inadequate to rebut the presumption that Nelson was an at-will employee for two reasons. First, unlike the employee manual in *Tomlinson*, which failed to expressly categorize the plaintiff's position as at-will, *see id.* ¶¶ 36, 44, the first page of Target's handbook provides that "[a]ll Target team members are 'at-will' team members, which means that team members can terminate the employment relationship at any time, for any or no reason." And it notes that Target has the same prerogative. It further instructs employees that they "should not . . . interpret any verbal or written statement, policies, or practices or procedures including this handbook, as altering their 'at-will' status." When Nelson began working for Target in 1997, she signed a form acknowledging that she had received and read a copy of the handbook. And we have previously held that "a clear and conspicuous disclaimer in an employee handbook negates an employee's contention that the employment relationship is other than at will." *Hamilton v. Parkdale Care Ctr., Inc.*, 904 P.2d 1110, 1112 (Utah Ct. App. 1995). Nelson's reliance on "Target's handbook and other employment policies" to establish that she was not an at-will employee is therefore misplaced.

¶19 Second, the handbook provisions on which Nelson relies are not necessarily inconsistent with Nelson's status as an at-will employee. Target may provide a ninety-day learning period to make sure that an employee has demonstrated some indication of intent to stay with the company beyond the short term before she is eligible for benefits, or it may hold new employees to lower performance standards for a few months until supervisors have had enough time to provide adequate training. Nelson has not pointed to any evidence indicating that Target's learning period does not serve a similar purpose, so the learning period by itself does not raise a reasonable inference that Nelson was

not an at-will employee, particularly in light of the handbook's specific disclaimer to the contrary. *Cf. Maxfield v. North Am. Phillips Consumer Elecs. Corp.*, 724 F. Supp. 840, 845–46 (D. Utah 1989) (concluding that an employer did not alter an employee's at-will employment status by placing him on probation). And the other provisions describing Target's disciplinary policy and efforts to treat its employees fairly are simply not specific enough under our case law to raise an issue of fact about whether Target ever intended to alter Nelson's at-will employee status. *See, e.g.*, *Trembly v. Mrs. Fields Cookies*, 884 P.2d 1306, 1313 (Utah Ct. App. 1994) (noting that it was not reasonable for an employee to interpret "general [oral] statements of fairness made to all company employees" as "an offer of employment other than at-will"); *Sorenson v. Kennecott Copper Corp.*, 873 P.2d 1141, 1148–49 (Utah Ct. App. 1994) (concluding that a progressive disciplinary policy and yearly performance reviews "failed to rebut the presumption of at-will employment"). Nelson was therefore an at-will employee, and Target could terminate her employment for any reason. Accordingly, we conclude that the district court correctly granted summary judgment to Target on Nelson's breach of contract claim.

B.     Intentional Infliction of Emotional Distress

¶20    The court also properly denied Nelson's claim of intentional infliction of emotional distress. Nelson argues that because Turner, the store security chief, admitted that he "conducted the interrogation *after* he had determined that Nelson had intentionally taken the wallet and was to be terminated," "the interview served no legitimate purpose other than to inflict emotional distress or to extract an admission from Nelson through intimidation in order to attempt to insulate Target from liability." But even if Turner intended to cause Nelson some distress, Nelson must still show that Turner's conduct during the interview was "outrageous and intolerable in that [it] offend[s] against the generally accepted standards of decency and morality." *See Franco v. Church of Jesus Christ of*

*Latter-day Saints*, 2001 UT 25, ¶ 25, 21 P.3d 198 (citation and internal quotation marks omitted).[4] Conduct that is merely "unreasonable, unkind, or unfair" does not qualify. *Id.* ¶ 28 (citation and internal quotation marks omitted). Rather, the plaintiff must identify behavior so extreme that it "evoke[s] outrage or revulsion." *Id.*

¶21 Here, Turner told Nelson that he did not believe she had taken the wallet by mistake and gave her several opportunities to explain herself. The interview was private and, according to company policy, conducted in the presence of a human resources representative. There is no evidence that Turner was verbally abusive or unprofessional. To the extent Nelson alleges that Turner interviewed her so that Target could avoid liability for her termination, such a purpose is legitimate and does not support Nelson's claim that Target deliberately caused her emotional distress. *Cf. Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶¶ 68–69, 70 P.3d 17 (concluding that allegations that a law firm engaged in conduct "to take advance action to prevent" a client from "prosecuting any action for damages" against the firm were insufficient to plead a prima facie intentional infliction of emotional distress claim). And the

---

4. "[T]o state a claim for intentional infliction of emotional distress, a plaintiff must allege that the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; *and* his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality."

*Franco v. Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 25, 21 P.3d 198 (citation and internal quotation marks omitted).

fact that Turner had already concluded that Nelson intentionally took the wallet and interviewed her for the sole purpose of persuading Nelson to admit it simply does not offend "generally accepted standards of decency and morality." *See Franco*, 2001 UT 25, ¶ 25 (citation and internal quotation marks omitted); *see also Dubois v. Grand Central*, 872 P.2d 1073, 1079 (Utah Ct. App. 1994) (concluding that the plaintiff's allegations that a retail store "fired her . . . based on incorrect information[] does not rise to the level of outrageous or intolerable conduct necessary to establish a prima facie claim of emotional distress"); *cf. Cabaness v. Thomas*, 2010 UT 23, ¶¶ 39–45, 232 P.3d 486 (holding that there was a factual issue about whether a supervisor's conduct was outrageous where the supervisor insulted and demeaned the plaintiff every day for years, told him to divorce his wife, forced him to work on a power line in the rain, and criticized him about personal matters in front of other employees after learning that the plaintiff suffered from depression). Consequently, the district court did not err when it determined that Turner's conduct was not sufficiently outrageous for Nelson's claim to withstand summary judgment.

C.    Defamation

¶22    Finally, Nelson has not raised any factual issues that preclude summary judgment on her defamation claim. The district court ruled that any alleged defamatory statements were shielded by a conditional privilege. On appeal, Nelson argues that either no privilege applies or that Target abused any applicable privilege by publicizing Nelson's termination too broadly and making reckless statements about the alleged theft. We conclude that the district court did not err in determining that a conditional privilege applies in these circumstances and that Target did not abuse it.

¶23    "The publication of a defamatory statement is conditionally or qualifiedly privileged in certain situations in which a defendant seeks to vindicate or further an interest

regarded as being sufficiently important to justify some latitude for making mistakes . . . ." *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 58 (Utah 1991). Our supreme court has noted that "[t]his qualified privilege protects an employer's communication to employees and to other interested parties concerning the reasons for an employee's discharge." *Id.* Thus, Target's internal communications about whether Nelson stole the wallet and therefore ought to be terminated are protected by a conditional privilege. As the name of the privilege implies, however, it is not absolute—Nelson's defamation claim could still survive summary judgment if she can identify factual issues about whether Target abused the privilege by "act[ing] with malice," publicizing "the defamatory material . . . beyond those who had a legally justified reason for receiving it," *see id.*, or making statements about Nelson "with knowledge of [their] falsity or with reckless disregard as to [their] falsity," *see Ferguson v. Williams & Hunt, Inc.*, 2009 UT 49, ¶ 21, 221 P.3d 205.

¶24 To that end, Nelson asserts that Target abused its privilege when it told uninterested third parties about the theft allegations. Specifically, she claims that a security officer "told his wife about the allegations," that "[o]ther Target employees also knew of the allegations," and that "the only reasonable inference" from these facts "is that the allegations were improperly disclosed to additional employees outside the investigation." But in support of these assertions, Nelson cites only to a page in her memorandum opposing Target's motion for summary judgment. That memorandum contains mere assertions that the security officer discussed the allegations with his wife and that "everyone at Target" had heard about the allegations; there are no affidavits attached to the memorandum or citations to depositions or other evidence to substantiate either of these conclusory allegations. Further, Nelson does not specifically identify what the officer told his wife and why it was defamatory, nor does she point to any specific statements by Target management that were disseminated to employees who had no need to know of the investigation.

¶25    As a result, Nelson's bare allegations are insufficient to withstand summary judgment because they appear to be unsupported by any admissible evidence. *See* Utah R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); *Norton v. Blackham*, 669 P.2d 857, 859 (Utah 1983) (noting that statements that "would not be admissible in evidence . . . may not be considered on summary judgment under Rule 56(e)"). Further, a plaintiff cannot avoid summary judgment based on "doubtful, vague, speculative or inconclusive evidence." *Andalex Res., Inc. v. Myers*, 871 P.2d 1041, 1047 (Utah Ct. App. 1994); *see also Kranendonk v. Gregory & Swapp, PLLC*, 2014 UT App 36, ¶ 15, 320 P.3d 689 ("A reasonable inference exists when there is at least a foundation in the evidence upon which the ultimate conclusion is based, while in the case of speculation, there is no underlying evidence to support the conclusion." (citation and internal quotation marks omitted)). And in defamation cases, "the language complained of must be set forth" with "a certain degree of specificity." *Dennett v. Smith*, 445 P.2d 983, 984 (Utah 1968). Thus, given the vague and speculative nature of even her unsupported assertions, Nelson has not met her burden to show a dispute of material fact or a legal error in the district court's conclusion that Target did not abuse its conditional privilege by sharing the circumstances of Nelson's termination with third parties. *See Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 29, 284 P.3d 630.

¶26    Nelson has also failed to raise an issue of fact about whether Target abused its conditional privilege by making false statements "with knowledge" or "with reckless disregard as to [their] falsity." *See Ferguson*, 2009 UT 49, ¶ 21. In *Ferguson*, the Utah Supreme Court affirmed a district court's summary judgment ruling that a law firm did not abuse its conditional privilege when it informed a client that a terminated attorney had overbilled the client's case. *Id.* ¶¶ 30–33. The attorney stated

in an affidavit that the firm did not discuss the matter with him before talking to the client and that there were serious flaws in the firm's analysis of his billable work that he could have pointed out had they spoken with him first. *Id.* ¶ 32. The court noted that the attorney's allegations did not show that the firm abused its conditional privilege because the allegations did not demonstrate that the firm "made the statement . . . knowing that it was false or that [firm members] acted with reckless disregard as to its falsity." *Id.* ¶ 33. The court concluded, "While there may be questions about the adequacy of [the firm's] investigation and what, in hindsight, may appear to have been a premature and possibly even erroneous conclusion, the evidence does not satisfy the standard of abuse required for the conditional privilege." *Id.*

¶27 Here, Nelson argues that Target abused the privilege because Turner's theft allegations "were based solely on his viewing the security camera video" without "interview[ing] the cashier or Nelson until after he had drawn his conclusion about Nelson having stolen the wallet." But Nelson fails to acknowledge that the surveillance footage itself is quite damning—she puts the customer's wallet in her purse with her right hand while her own wallet is in her left, apparently after first confirming with a glance that the cashier had looked away. And then she pays for her items using her own wallet before placing it in her purse on top of the other wallet. Perhaps Target could have conducted a more thorough investigation, but we cannot conclude that "there are obvious reasons to doubt . . . the accuracy of his" conclusions even if we agreed with Nelson that the investigation was inadequate. *See id.* ¶ 30 (citation and internal quotation marks omitted). And Nelson has not pointed to any other evidence showing that Target management ever entertained serious doubts about whether Nelson intentionally took the wallet. Consequently, she has not raised an issue of fact about whether Target abused its conditional privilege by making false statements knowingly or recklessly. We therefore conclude

that the district court properly granted Target's motion for summary judgment on Nelson's defamation claim.[5]

## II. Motion to Amend

¶28 Because we have already determined as a matter of law that Nelson was an at-will employee, we also conclude that the district court correctly denied her motion to amend as futile. Nelson attempted to add a claim for breach of the covenant of good faith and fair dealing, arguing that "[a]n implied covenant of good faith and fair dealing was created by [language in] Target's" employee handbook. A covenant of good faith and fair dealing inheres in every contract, but the covenant cannot create obligations that the parties did not contemplate in the contract itself. *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 45, 104 P.3d 1226 (noting that the covenant of good faith and fair dealing "cannot be read to establish new, independent rights or duties to which the parties did not agree ex ante"). The handbook clearly indicated that Nelson was an at-will employee, explained what that term means, and notified her that no statement in the handbook or by her supervisors should be understood to alter that relationship. Consequently, the covenant of good faith and fair dealing cannot prevent Target from exercising its right to terminate her "for any reason (or no reason) except where prohibited by law," *see Cabaness v. Thomas*, 2010 UT 23, ¶ 78, 232 P.3d 486 (citation and internal quotation marks omitted), and a claim for breach of the covenant of good faith and fair dealing would not have survived a motion to dismiss. Consequently, we conclude that the district court's decision to deny the motion as futile was correct. *See Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 139, 82 P.3d 1076 ("It is well settled that a court may deny a

---

5. Nelson has not argued on appeal that Target abused its privilege by "act[ing] with malice." *See Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 58 (Utah 1991).

motion to amend as futile if the proposed amendment would not withstand a motion to dismiss . . . ." (omission in original) (citation and internal quotation marks omitted)).

### III. Rule 56(f) Motion

¶29     For similar reasons, we also conclude that the district court properly denied Nelson's rule 56(f) motion. The denial of a rule 56(f) motion is reviewed for an abuse of discretion. *Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 20, 192 P.3d 858. We will not reverse such a decision "unless it exceeds the limits of reasonability." *Id.* (citation and internal quotation marks omitted). This standard involves consideration of several factors:

> (1) an examination of the party's rule 56(f) affidavit to determine whether the discovery sought will uncover disputed material facts that will prevent the grant of summary judgment or if the party requesting discovery is simply on a "fishing expedition," (2) whether the party opposing the summary judgment motion has had adequate time to conduct discovery and has been conscientious in pursuing such discovery, and (3) the diligence of the party moving for summary judgment in responding to the discovery requests provided by the party opposing summary judgment.

*Id.* ¶ 21. In *Overstock.com*, our supreme court affirmed the denial of a rule 56(f) motion. *Id.* ¶ 27. The court observed that the plaintiff had sent just one set of discovery requests in two years. *Id.* ¶ 24. But "[t]he more fundamental problem" with the motion was that "it failed to identify any discovery requests that, if answered, would affect the outcome of the summary judgment motion." *Id.* ¶ 26.

¶30 Here, Nelson asserts that she "diligently pursued discovery throughout the discovery period, sending two sets of interrogatories and requests for production of documents . . . and conducting depositions of all of the witnesses identified by [Target] in its initial disclosures." But like the plaintiff in *Overstock.com*, Nelson has not identified any discoverable facts that would preclude summary judgment on any of her claims. Her memorandum supporting the rule 56(f) motion identified two witnesses she intended to depose if the court allowed more discovery—a Target manager, who Nelson contends was required by company policy to approve her termination, and the customer whose wallet Nelson had taken. Nelson argues that the manager's testimony might reveal that her termination was never approved and violated company policy, but that would not change Nelson's status as an at-will employee whom is subject to termination for any reason, and she does not explain in any detail how Target's violation of an internal policy would support any claim that she has made here. Nelson also asserts that the customer's testimony "would rebut statements made by Target," but she does not identify which statements would be rebutted or how the customer's testimony would preclude summary judgment on any of her claims. And of course, neither witness was involved in Nelson's "interrogation," which is the conduct that Nelson alleges "constituted the intentional infliction of emotional distress." Finally, Nelson does not argue that either witness would have provided information related to her defamation claim. Consequently, we cannot say that the district court's decision denying Nelson's rule 56(f) motion "exceed[ed] the limits of reasonability," *see id.* ¶ 20 (citation and internal quotation marks omitted), and we therefore decline to disturb it.

CONCLUSION

¶31 We conclude that the district court properly granted summary judgment on Nelson's claims of breach of contract,

intentional infliction of emotional distress, and defamation. We also conclude that because there was no factual dispute about Nelson's at-will employment status, her motion to add a claim for breach of the covenant of good faith and fair dealing was properly denied as futile. Finally, we conclude that the court did not exceed its discretion in denying Nelson's rule 56(f) motion because Nelson did not identify any discoverable facts that would have precluded summary judgment on any of her claims.

_____