2021 UT App 23

# THE UTAH COURT OF APPEALS

DAVID HARDY,
Appellant,
*v.*
SAGACIOUS GRACE LC AND LESLIE MOWER,
Appellees.

Amended Opinion[*]
No. 20190063-CA
Filed March 4, 2021

Fourth District Court, American Fork Department
The Honorable Roger W. Griffin
The Honorable Christine S. Johnson
No. 150100206

Justin D. Heideman and Justin R. Elswick, Attorneys
for Appellant

Denver C. Snuffer Jr., Attorney for Appellees

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and KATE APPLEBY concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     David Hardy contends that the district court erred in
denying his summary judgment motion and granting Leslie
Mower and Sagacious Grace LC's motion for summary
judgment based on its determination a real estate purchase
contract was unenforceable because it was signed by someone

---

[*] This Amended Opinion replaces the Opinion in Case No.
20190063-CA issued on October 16, 2020. After our opinion
issued, the Appellant filed a petition for rehearing, and we called
for a response. We grant the petition for the purpose of clarifying
the analysis in footnote 4.

other than the manager of the limited liability company that owned the property. We affirm.

## BACKGROUND

¶2 Desiring to expand his business to an adjacent lot (Property) in Springville, Utah, Hardy reached out to the Property owner's legal counsel (Attorney). Attorney told Hardy that he represented Leslie Mower and Sagacious Grace LC (SG). SG owned the Property and was a manager-managed limited liability company. Leslie Mower was the sole member of SG.[1]

¶3 Attorney told Hardy that SG was not interested in leasing the Property but was willing to sell it. After some negotiations, Hardy prepared a real estate purchase contract (REPC) to purchase the Property for $150,000 and submitted the REPC to Attorney on August 4, 2015. Mower initialed and signed each page of the REPC. Hardy did not sign the REPC, but he initialed each page and hand printed his name below the signature line.[2] Hardy tendered an earnest money deposit of $3,000 and obtained the financing necessary to complete the purchase. Hardy proceeded to make plans to incorporate the Property into

---

1. Based on Mower's testimony during deposition and at trial, it appears that she was the sole member of SG, a point the parties do not dispute on appeal. At trial, Mower testified, "I believe I'm the only member [of SG]." And in her deposition, she unequivocally stated, "I am the only member [of SG]." The record does not include SG's certificate of organization.

2. Both parties acknowledge that Hardy never signed the REPC on the designated line, but nothing in the record suggests that either party contended the REPC was invalid for this reason. This issue has not been raised on appeal.

his business, including changing his business model and obtaining a variance from the city for use of the Property.

¶4    On September 3, 2015, Attorney contacted Hardy to inform him that SG was repudiating the REPC.[3] Attorney informed Hardy that he would be returning the earnest money, but Hardy instructed him not to because the returned earnest money would not be accepted and stated that he intended to close the transaction. Attorney reiterated that SG would not close the transaction. Hardy contacted legal counsel. That same day, Hardy's counsel contacted Attorney seeking assurances that SG would perform the contract. Hardy's counsel followed up by sending a letter demanding "additional assurances that the REPC between [Hardy and SG would] be fully executed by the stated closing date, September 8, 2015."

¶5    On September 8, 2015, the parties again communicated by letter. Attorney first informed Hardy's counsel that closing was not until September 16 and that his "client [was] out of the country until September 14." Attorney suggested moving the closing to September 30 to "give [his] client time to the make an informed decision." In a second letter, also dated September 8, Attorney asserted,

> I have taken a close look at the REPC in this matter. I have noticed that it is signed by Leslie Mower on behalf of [SG]. [SG] is a manager managed limited liability company and Leslie Mower is not the manager. Therefore, I do not believe that the contract is binding on [SG]. Therefore, [SG] will not be closing the transaction.

---

3. SG maintains that "[s]hortly after August 3, 2015, Hardy was informed that SG was repudiating the REPC." We note that Mower signed the REPC on August 6, 2015.

¶6    Hardy's counsel responded in writing the same day. "After performing some research," he had discovered that Mower was not in fact SG's manager and that another limited liability company—LC Manager, LC—managed SG. Hardy further learned that the manager of LC Manager was Jami Ross, not Mower, and that Ross had the authority to act for SG. Hardy's counsel's letter underscored two main points. First, he noted that Attorney's conduct during negotiations and obtaining the signed REPC indicated that Mower had the authority to sign the contract on SG's behalf: "Given the representation of [a]uthorization, [Hardy] had no reason to believe otherwise, and no constructive knowledge would indicate that . . . Mower was not authorized." Second, he noted that even though Mower was not SG's manager, she was authorized to sign the REPC, thus binding SG to its terms. Specifically, Hardy pointed to Section 13 of the REPC, which stated, "If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company or other entity, the person signing the REPC on its behalf warrants his or her authority to do so and to bind Buyer and Seller."

¶7    On September 9, Attorney wrote to Hardy's counsel, noting that he disagreed with the facts as stated and with counsel's conclusions; he also enclosed a check refunding the earnest money.

¶8    Hardy filed a complaint in district court alleging numerous causes of action: fraudulent non-disclosure/fraudulent misrepresentation as to Mower, anticipatory breach and/or breach of contract, breach of the covenant of good faith and fair dealing, apparent authority as to Mower, agency, breach of warranty as to Mower, and constructive trust as to SG.

¶9    In June 2016, the district court granted SG's motion for summary judgment and dismissed all of Hardy's causes of action except his claim of fraudulent misrepresentation. Specifically, the court determined that because Mower was not SG's manager, she lacked the authority—actual or apparent—to

sign the REPC on behalf of SG. The court reasoned that apparent authority must stem from the conduct of the principal—in this case LC Manager, the sole manager of SG: "Hardy has offered no facts to support his position that the *principal* of [SG] caused Hardy to believe that either Mower or [Attorney] had authority to act on behalf of [SG]. Accordingly, Hardy cannot prevail on summary judgment under the theory of apparent authority." Furthermore, the court determined that the REPC was "voidable and subject to ratification only by the injured party, [SG]. [SG] offered no written ratification of the REPC."

¶10   The court also ruled that Hardy's pendant claims, including the claim for breach of warranty, could not survive because they were based on an unenforceable REPC: "Because [the district court] has determined the REPC to be voidable, and because the REPC has not been ratified by [SG], the REPC fails and all claims which are dependent upon it must likewise fail." As to Hardy's claim of fraudulent misrepresentation, the court observed that "this claim necessarily entail[ed] the weighing the reasonableness of Hardy's conduct," "a fact-dependent task not properly undertaken on summary judgment."

¶11   At a bench trial on the remaining fraudulent misrepresentation claim, Mower testified that (1) she was the sole member of SG; (2) SG did not have a board of directors; (3) she regularly signed documents without reading them; (4) she should not have signed the REPC because, unbeknownst to her, it pertained to a property SG owned and therefore should not have been presented to her; (5) she was uncertain if she had the authority to sign the REPC; (6) she did not "pay attention" or "even look at" the REPC when she signed it; (7) she knew she "probably shouldn't have been signing" the REPC, but she did not "even think about it" because she trusts "people that work for [her]" when they put a paper "in front of [her] and say 'sign it'"; (8) she thought the REPC pertained to a piece of property she owned in Salem, Utah; (9) she did not notice the REPC identified a property in Springville as the one being sold; (10)

though Mower was not its manager, she had signed documents on behalf of SG in the past; and (11) had SG been identified on the REPC, she would not have signed the REPC "because the only property at the time that [she] was selling was a house in Salem," which was owned by a different company.

¶12    Hardy testified that had he known LC Manager managed SG, he would have wanted Ross's signature on the REPC. He also revealed that he had completed "three to five" REPCs in the past, usually with the help of a realtor, but felt comfortable handling the purchase of the Property himself because he was dealing with SG's legal counsel.

¶13    Following trial, the court dismissed the fraudulent misrepresentation claim with prejudice, finding that Hardy had not met his burden of proof. Hardy appeals.

ISSUE AND STANDARD OF REVIEW

¶14    The issue on appeal is whether the district court erred in granting summary judgment in favor of SG based on its determination that because Mower lacked the authority to bind SG to the terms of the REPC as she was not its manager, the REPC was voidable and unenforceable. "Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. We review the district court's decision to grant summary judgment for correctness." *Berger v. Ogden Reg'l Med. Center*, 2020 UT App 85, ¶ 16, 469 P.3d 1127 (quotation simplified).[4]

---

4. Hardy also contends the district court erred in finding that SG was an injured party and was entitled to void the REPC. Because

(continued…)

(…continued)

Mower lacked the authority to sign on behalf of SG, we need not address this issue.

Hardy further argues that the district court, based on its determination that the REPC was not enforceable, erred in granting summary judgment in favor of Mower on Hardy's breach of warranty claim. We are unpersuaded by Hardy's argument, largely owing to the cursory manner in which he develops it. To carry his burden of persuasion on appeal, Hardy's brief "must provide meaningful legal analysis" of "the issues with citation to relevant legal authority." *State v. Hawkins*, 2016 UT App 9, ¶ 60, 366 P.3d 884 (quotation simplified). But, "mere bald citation to authority, devoid of any analysis, is not adequate." *Id.* (quotation simplified) Although Hardy cites at length the Restatement (Third) of Agency on the topic of breach of warranty in support of his assertion that the court erred, he makes little effort to explain the specific error in the district court's reasoning. Rather, he makes this conclusory assertion: "Even if this Court does not reverse the trial court's determinations as to the issue of authority and voidability of the REPC, this Court can and should reverse the trial court's dismissal of the Breach of Warranty claim against Mower personally." More significantly, in citing the Restatement, Hardy does not address the rather obvious condition placed on an implied warranty of authority:

> A person who purports to make a contract, representation, or conveyance to or with a third party on behalf of another person, lacking power to bind that person, gives an implied warranty of authority to the third party and is subject to liability to the third party for damages for loss caused by breach of that warranty, including loss of the benefit expected from performance by the principal, *unless* . . . the third party *knows* that the person who purports to make the contract,

(continued…)

ANALYSIS

¶15 Hardy contends that the district court erroneously concluded that because Mower lacked the authority to sign the REPC on its behalf, that document was not binding on SG.

¶16 Utah law provides that "[i]n a manager-managed limited liability company . . . , any matter relating to the activities and affairs of the limited liability company is decided exclusively by the manager." Utah Code Ann. § 48-3a-407(3)(a) (LexisNexis 2015). The parties agree that SG was a manager-managed limited liability company, that LC Manager was the publicly listed sole manager of SG, and that Ross was the sole manager of LC Manager. Relying on these facts and precedent, the district court concluded that only Ross had the authority to act on SG's behalf and that Mower lacked authority—actual or apparent—to bind SG to the REPC.

¶17 "Under agency law, an agent cannot make its principal responsible for the agent's actions unless the agent is acting pursuant to either actual or apparent authority." *Hussein v. UBS Bank USA*, 2019 UT App 100, ¶ 30, 446 P.3d 96 (quotation simplified). Here, Mower had neither type of authority. She had no actual authority to sign the REPC because she was not SG's

---

(…continued)
> representation, or conveyance acts without actual authority.

Restatement (Third) of Agency § 6.10 (Am. Law Inst. 2006) (emphasis added). As we explain, *see infra* ¶ 17, Hardy should have known that Mower lacked authority—actual or apparent— through SG's public filings. "Accordingly, [Hardy] fails to carry his burden of persuasion on appeal" with respect to whether the district court erred in granting summary judgment in favor of Mower on the breach of warranty claim. *See Hawkins*, 2016 UT App 9, ¶ 60.

manager. *See* Utah Code Ann. § 48-3a-407(3)(a) ("[A]ny matter relating to the activities and affairs of the limited liability company is decided exclusively by the manager . . . ."). And Hardy has not shown that SG did anything to indicate to Hardy that Mower had apparent authority to sign the REPC. "Apparent authority exists where the conduct of the principal causes a third party to reasonably believe that someone has authority to act on the principal's behalf, and the third party relies on this appearance of authority and will suffer loss if an agency relationship is not found." *Zions Gate R.V. Resort, LLC v. Oliphant*, 2014 UT App 98, ¶ 11, 326 P.3d 118 (quotation simplified). Moreover, Hardy should have been aware that Mower lacked apparent authority through SG's public filings. *See id.* ¶ 14 ("[T]he law imposed on [the tenant] the obligation to ascertain whether [the agent] had authority to enter into the [l]ease— including obtaining a copy of the [certificate of organization] from the state if necessary."). And "knowledge of an agent's lack of authority defeats a claim for apparent authority." *Id.* ¶ 11 (quotation simplified).

¶18 But Hardy does not argue that Mower exercised authority to sign the REPC as SG's manager; rather, he asserts that Mower exercised authority pursuant to a statutory grant: "The affirmative vote or consent of all members is required to . . . undertake any act outside the ordinary course of the limited liability company's activities and affairs . . . ." Utah Code Ann. § 48-3a-407(3)(c)(ii).[5] Under this provision, Hardy contends that

---

5. SG argues that this court "should ignore this argument because Hardy raises it for the first time after his appeal on other issues." Specifically, SG contends that because this argument was first raised in a motion to reconsider and because Hardy's notice of appeal does not explicitly reference the district court's decision on that motion, this argument lies outside the scope of this appeal. We are not persuaded. Hardy's notice of appeal indicated that he was appealing from the court's first summary

(continued…)

"Mower was the sole member of SG and had intentionally consented to sign the REPC. As a result, Mower could (and did) override the general restriction in Utah Code Ann. § 48-3a-407(3)(a) which requires that the activities and affairs of a manager-managed company be decided exclusively by the manager."

¶19    In support of his argument, Hardy asserts that Mower had the authority to sign because (1) she signed the REPC intentionally and (2) selling the Property was an "act outside the ordinary course" of SG's "activities and affairs," thereby superseding the requirement that the manager (namely, LC Manager) execute the REPC. (Quotation simplified.) Hardy specifically argues that because SG had not sold property in a "very, very long time" and because Ross (on behalf of LC Manager) had not signed documents on behalf of SG during the previous five years,[6] selling the Property was outside "the

---

(…continued)

judgment ruling and the final judgment dismissing with prejudice his claim of fraudulent misrepresentation. As this court has stated, "Where the notice of appeal sufficiently identifies the final judgment at issue and the opposing party is not prejudiced, the notice of appeal is to be liberally construed. Put another way, where the appealing party's intent is clear and the appellee suffers no prejudice, the notice of appeal is sufficient." *Pulham v. Kirsling*, 2018 UT App 65, ¶ 29, 427 P.3d 261 (quotation simplified), *aff'd*, 2019 UT 18, 443 P.3d 1217. Thus, even though Hardy's "notice of appeal failed to explicitly reference [the order on his motion to reconsider,] we nonetheless determine[] that the notice of appeal sufficiently demonstrated the intent to appeal [that] unreferenced order." *See Pulham v. Kirsling*, 2019 UT 18, ¶ 29 n.8, 443 P.3d 1217.

6. While Hardy contends that Mower stated in her deposition that SG had not sold property in "very, very long time," Mower

(continued…)

ordinary course of business." In essence, Hardy's argument is that Mower intentionally exercised her prerogative—by executing an action outside SG's ordinary course of activities—as the sole member of SG to override the requirement that LC Manager sign the REPC.

¶20    Hardy's argument is unpersuasive for two reasons. First, Hardy's contention that selling the Property was "outside [SG's] ordinary course of business" is unsupported by the record. Hardy has presented only minimal evidence regarding the nature of the "ordinary course" of SG's "activities and affairs." Neither SG's certificate of organization nor any operating agreement[7] appears to be included in the record. Having presented little evidence of SG's purpose or the nature of its "activities and affairs," Hardy has not carried his burden to

_____

(…continued)

in fact said she personally had not sold property in some time. When asked why she signed the REPC even though she was uncertain as to which property it pertained, Mower replied, "I didn't even—I didn't even think about it, because I haven't sold a piece of property for a long, long time. I've bought property, but I haven't sold property. In fact, this is the first piece of property that I've sold in a very, very long time sir." So far from saying SG had not sold property in a "very, very long time," Mower said that she, as an individual, had not done so. When asked "how often . . . Ross ha[d] executed documents in the last five years on behalf" of SG, Mower replied, "None, to my knowledge."

7. A manager-managed limited liability company must be designated as such in the operating agreement. *See* Utah Code Ann. § 48-3a-407(1) (LexisNexis 2015). *See generally id.* § 48-3a-201 (describing the provisions required in a certificate of organization); *id.* § 48-3a-112 (setting out the requirements of an operating agreement).

show that selling property was outside the ordinary course of SG's activities. *See Montana Food, LLC v. Todosijevic*, 2015 WY 26, ¶ 23, 344 P.3d 751 (looking to a company's operating agreement and articles of organization to determine whether an action was outside the ordinary course of activities); *In re Estate of Kelley*, No. M2001-00847-COA-R3-CV, 2002 WL 1484445, at *11 (Tenn. Ct. App. July 12, 2002) (requiring a plaintiff to offer proof that certain actions were "made outside the ordinary course of business"); *Osterweil v. Crean*, 26 A.2d 307, 308 (Pa. 1942) (per curiam) (stating that the plaintiff had the burden of proving that the sale of clothing was outside the ordinary course of business).

¶21    Second, Mower's deposition testimony that she had not sold property in some time and that she was unaware of when Ross had last signed documents for SG, *see supra* note 6, is not evidence that gives rise to a "reasonable inference" that selling property was outside SG's ordinary course of activities and affairs. *See Levitt v. Iasis Healthcare Holdings Inc.*, 2019 UT App 68, ¶ 20, 442 P.3d 1211. "When the facts are so tenuous, vague, or insufficiently established that determining an issue of fact becomes completely speculative, the claim fails as a matter of law, and summary judgment is appropriate." *Pintar v. Houck*, 2011 UT App 304, ¶ 17, 263 P.3d 1158 (quotation simplified); *see Nelson v. Target Corp.*, 2014 UT App 205, ¶ 25, 334 P.3d 1010 ("A plaintiff cannot avoid summary judgment based on doubtful, vague, speculative or inconclusive evidence." (quotation simplified)). Indeed, Mower testified that SG "simply holds land."[8] If SG is a property holding company—which it may well be given Mower's testimony and because the record indicates that it owned other properties—one would not necessarily

---

8. During her deposition, Mower stated that "[SG] is land" and that it held "three or four" properties. Earlier in the deposition, she had stated that SG also manufactured powdered drinks but later clarified that "SG doesn't manufacture anything" and "just holds properties."

expect SG to buy and sell property with any frequency, yet selling property could still be within the ordinary course of its business. SG might hold property for many years waiting for the opportunity to make a profitable sale. Moreover, the mere facts that Mower had not sold property in a long time and that Mower could only speculate about whether Ross had executed documents on behalf of SG during the previous five years is largely irrelevant; these facts do not address the scope of SG's ordinary course of affairs but focus instead on Mower's activity as an individual and Mower's speculation about Ross's involvement in SG's affairs. To survive summary judgment, Hardy was required to do more than speculate; he needed to provide some evidence of SG's business purpose—such as would be indicated in its certificate of organization or testimony from SG's manager—that would show selling property was outside the company's ordinary course of affairs. Thus, the district court did not err in granting summary judgment, because there nothing—apart from vague speculation—to give rise to a reasonable inference that selling property fell outside SG's ordinary course of affairs.

## CONCLUSION

¶22    The district court did not err in granting SG and Mower's motion for summary judgment or by determining that Mower did not possess the authority to sign the REPC.

¶23    Affirmed.

————