2009 UT App 299

**E & M SALES WEST, INC., dba Heatsource, a Utah corporation, Plaintiff and Appellant,**

v.

**Bechtel Jacobs Company, LLC, a Delaware limited liability company, Defendant, Third-party Plaintiff, and Appellee,**

v.

**DIVERSIFIED METAL PRODUCTS, INC., an Idaho corporation; and Diversified Control Systems, LLC, an Idaho limited liability company, Third-party Defendants and Appellee.**

No. 20070690–CA.

Court of Appeals of Utah.

Oct. 22, 2009.

Edward M. Garrett, Salt Lake City, for Appellant.

Kevin D. Swenson, Salt Lake City, for Appellee Diversified Metal Products, Inc.

Jennifer L. Lange and Bryan K. Benard, Salt Lake City, for Appellee Bechtel Jacobs Company, LLC.

Before Judges GREENWOOD, BENCH, and ORME.

## OPINION

ORME, Judge:

¶ 1 Appellant E & M Sales West, Inc., seeks reversal of the summary judgment entered against it. We reverse with respect to an unjust enrichment claim, but otherwise affirm.

## BACKGROUND

¶ 2 This case involves a series of contracts and subcontracts. Pursuant to a contract with the United States Department of Energy, appellee Bechtel Jacobs Company's duties included "environmental cleanup of the Molten Salt Reactor Experiment." To perform under the cleanup project, Bechtel Jacobs needed to use a "Salt Melting and Processing Probe System" (the System), and it requested bids for production of the System. Bechtel Jacobs accepted appellee Diversified Metal Products, Inc.'s bid, and the two entities entered into a purchase order contract for production of the System. As part of its obligations, Diversified Metal needed to produce a heater probe unit to be used in the System, and it subcontracted with Diversified Control Systems, LLC, to produce the necessary heaters. Diversified Control then entered into a purchase order agreement with appellant E & M Sales West, Inc., which does business under the name Heatsource, for production of a five-zone heater to be used in the System.[1]

¶ 3 The evidence accepted as true[2] shows that Bechtel Jacobs claims the series of con-

---

1. Due to appellant Heatsource's failure to strictly comply with rule 7 of the Utah Rules of Civil Procedure, *see generally* Utah R. Civ. P. 7(c)(3)(B), and its failure to challenge in its opening brief the trial court's decision to accept as true the statement of undisputed facts in Bechtel Jacobs's first memorandum supporting its summary judgment motion, our brief recitation of the background facts is based on Bechtel Jacobs's statement of the undisputed facts. *See generally* Utah R.App. P. 24(a)(9), (c); *Allen v. Friel,* 2008 UT 56, ¶ 8, 194 P.3d 903 ("It is well settled that 'issues raised by an appellant in the reply brief that were not presented in the opening brief are

considered waived and will not be considered by the appellate court.'") (citation omitted). We have only included additional facts, where necessary, to provide relevant background information, but those additional facts do not appear to be disputed as they were discussed in the trial court's rulings on Bechtel Jacobs's two motions for summary judgment, which rulings were based on Bechtel Jacobs's statement of the undisputed facts.

2. We refer to the undisputed facts from Bechtel Jacobs's first summary judgment memorandum

tracts and subcontracts between the relevant entities all covered the same technology and specifications for the heaters that needed to be produced. The evidence accepted as true also shows that Heatsource admitted Bechtel Jacobs's specifications were encompassed by the agreement it had with Diversified Control, including both U-bent and non-U-bent technologies,[3] excepting a temperature specification. Specifically, Heatsource claims its agreement with Diversified Control required a 650–degree Celsius temperature specification instead of an 800–degree Celsius specification.

¶ 4 Heatsource produced a five-zone heater with the capacity to reach 650 degrees, but this first heater failed, upon testing, at higher temperatures. At a meeting where representatives from all relevant entities were allegedly present to discuss the failure of the first heater, Heatsource contends a Bechtel Jacobs representative indicated that if Heatsource produced a second heater that would withstand the higher temperatures, " 'the money truck [would] back[ ] up to the building' " and Bechtel Jacobs "would 'take care' of Heatsource." Heatsource built this second heater.

■ ¶ 5 Bechtel Jacobs paid Diversified Metal pursuant to their contract for production of the System. Diversified Control paid Heatsource for production of the first heater. Through Diversified Metal, Heatsource sought an equitable adjustment for the second heater from Bechtel Jacobs, which Bechtel Jacobs denied. When Bechtel Jacobs failed to compensate Heatsource for production of the second heater, Heatsource sued Bechtel Jacobs for fraud, unjust enrichment, and breach of the covenant of good faith and fair dealing. Heatsource later amended its complaint against Bechtel Jacobs to include an implied-in-fact contract claim.[4] Bechtel Jacobs thereafter filed third-party complaints against Diversified Metal and Diversified Control, with claims of breach of contract, breach of the covenant of good faith and fair dealing, indemnity, and declaratory relief against Diversified Metal, and with claims of indemnity and declaratory relief against Diversified Control. Heatsource also filed an amended complaint asserting claims of breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment against Diversified Metal.

¶ 6 Pursuant to summary judgment motions filed by Bechtel Jacobs and Diversified Metal, the trial court dismissed all of Heatsource's claims. We affirm the trial court's dismissal of all claims pursuant to the summary judgment motions,[5] excepting only

---

that were deemed admitted due to Heatsource's rule 7 failures as the "evidence accepted as true" because, in several instances, the statement of the undisputed facts discussed conflicting testimony and allegations, rather than just identifying actual facts that were undisputed. In essence, it has been admitted that there was a dispute on certain points, and Bechtel Jacobs's position is that summary judgment is appropriate due to the immaterial nature of any such disputes. We accordingly accept that the statement of facts and the evidentiary disputes identified therein are a true and accurate reflection of the evidence considered by the trial court, and we have of course limited our analysis to considering Heatsource's arguments on appeal regarding its unjust enrichment claim in light of the evidence accepted as true.

3. The parties and the trial court drew a distinction between U-bent and non-U-bent technologies, but the difference between these technologies has not been adequately explained. The pertinent point on appeal is that Heatsource admitted its agreement with Diversified Control covered both types of technologies, while disputing that its agreement required the 800–degree temperature specification.

4. Heatsource also included a separate claim for quantum meruit in its original complaint, and its opening brief on appeal contains two unjust enrichment sections, which basically present the same argument. While the second branch of quantum meruit deals with implied-in-fact contract claims, which are separate and distinct from unjust enrichment claims, *see generally Emergency Physicians Integrated Care v. Salt Lake County*, 2007 UT 72, ¶ 10, 167 P.3d 1080; *Davies v. Olson*, 746 P.2d 264, 268–69 (Utah Ct.App. 1987), and although Heatsource did present an implied-in-fact contract claim in its amended complaint against Bechtel Jacobs, Heatsource failed to adequately challenge the trial court's dismissal of its implied-in-fact contract claim in its opening brief on appeal, and we therefore do not address it. *See generally* Utah R.App. P. 24(a)(9), (c); *Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903.

5. Heatsource's challenges to the dismissal of these additional claims do not merit discussion as these challenges were not adequately raised in Heatsource's opening brief, were inadequately briefed, or the evidence accepted as true fully supports the trial court's rulings. *See generally*

Heatsource's unjust enrichment claim against Bechtel Jacobs.

## STANDARD OF REVIEW

¶ 7 " 'Summary judgment is appropriate when there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " *Emergency Physicians Integrated Care v. Salt Lake County,* 2007 UT 72, ¶ 8, 167 P.3d 1080 (citation omitted). On appeal, we "give[ ] no deference to the lower court's legal conclusions and review[ ] the issues presented under a correctness standard. Factual disputes are viewed in the light most favorable to the nonmoving party." *Id.* (citations omitted).

## ANALYSIS

■■■■ ¶ 8 A remedy based on *either* branch of the equitable doctrine of quantum meruit—i.e., (1) unjust enrichment/quasi-contract/contract implied-in-law, or (2) contract implied-in-fact, *see Davies v. Olson,* 746 P.2d 264, 268–69 (Utah Ct.App.1987), is only available if a party has first exhausted its legal remedies. *See American Towers Owners Ass'n, Inc. v. CCI Mech., Inc.,* 930 P.2d 1182, 1193 (Utah 1996) ("The [unjust enrichment] doctrine is designed to provide an equitable remedy where one does not exist at law."). "In other words, if a legal remedy is available, such as breach of an express contract, the law will not imply the equitable remedy of unjust enrichment." *Id. See Davies,* 746 P.2d at 268 ("Recovery under *quantum meruit* presupposes that no enforceable written or oral contract exists."). Our case law, however, supports the proposition that even where there is an express contract, an equitable claim may be viable, under specific factual circumstances, if the equitable claim is based on a separate representation or misleading act arising independently of the express contract. *See Commercial Fixtures & Furnishings, Inc. v. Adams,* 564 P.2d 773, 774 (Utah 1977) ("The mere fact that a third person benefits from a contract between two others does not make such third person liable

in quasi-contract, unjust enrichment, or restitution. There must be some misleading act, request for services, or the like, to support an action.") (citation omitted); *Baker v. Holland Furnace Co.,* 95 Utah 396, 81 P.2d 1114, 1118 (1938) (determining a quantum meruit instruction to the jury was proper when the quantum meruit claim arose based on work performed, "independent[ ] of the written [employment] contract," and pursuant to the division manager's approval, even when the employment contract specifically indicated that "the company would not be held responsible for any special agreement between the [plaintiff] and the division manager, unless such was incorporated in the contract"); *Knight v. Post,* 748 P.2d 1097, 1098–1101 (Utah Ct.App.1988) (discussing, in a case involving an oral contract between an insulation company and the operator of an oil well where the insulation company filed a quantum meruit action against the owner of the well, that a quantum meruit claim was not viable, based on *Commercial Fixtures,* where the evidence did not show the owner requested services or committed a misleading act). *See also Concrete Prods. Co. v. Salt Lake County,* 734 P.2d 910, 910–12 (Utah 1987) (denying an unjust enrichment claim against Salt Lake County brought by a supplier who had delivered materials to a subcontractor pursuant to a contract and had not been paid by the subcontractor, after the supplier had "unsuccessfully sued the subcontractor").

### I. Separate Representation of Payment

¶ 9 In its ruling on Bechtel Jacobs's first motion for summary judgment, the trial court dismissed the unjust enrichment claim, reasoning that the series of contracts and subcontracts covered the subject matter of the dispute. In the same order, however, the court gave Heatsource leave to file an amended complaint with an implied-in-fact contract claim. In its order dismissing Heatsource's second amended complaint, dealing solely with the implied-in-fact contract claim, the trial court noted that it granted leave to file the implied-in-fact contract claim to see if

*State v. Carter,* 776 P.2d 886, 888 (Utah 1989) ("[T]his Court need not analyze and address in writing each and every argument, issue, or claim raised and properly before us on appeal. Rath-

er, it is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court.").

Heatsource could establish that there was a separate agreement between it and Bechtel Jacobs, apart from the express contracts and subcontracts between the relevant entities. And the court further indicated that the facts showed a potential dispute regarding whether a Bechtel Jacobs representative made a separate representation of payment to Heatsource, but the court concluded that any such dispute was not material.

¶ 10 Because both Heatsource's unjust enrichment and implied-in-fact contract claims arose from the same alleged representation or misleading statement by a Bechtel Jacobs representative regarding payment, it was error for the trial court to consider if the alleged representation or statement established a dispute over whether the implied-in-fact contract claim arose from a separate transaction, but to not consider the same with regard to the unjust enrichment claim.[6] And when viewing the evidence accepted as true in a light most favorable to Heatsource, *see Emergency Physicians Integrated Care,* 2007 UT 72, ¶ 8, 167 P.3d 1080, we conclude the evidence shows a material dispute of fact concerning whether the unjust enrichment claim arose from a separate agreement, a representation of payment, or a misleading statement regarding payment, apart from the express contracts and subcontracts.

¶ 11 As the trial court recognized in its ruling on the implied-in-fact contract claim, the evidence accepted as true shows that there was a dispute regarding whether a Bechtel Jacobs employee made a separate representation about payment to Heatsource. Also, while indicating that Heatsource admitted its agreement with Diversified Control covered both U-bent and non-U-bent technologies, which technologies were also covered by the contract between Bechtel Jacobs and Diversified Metal, the evidence accepted as true indicates that Heatsource did not admit the temperature specifications were the same.

¶ 12 Even assuming the contracts generally covered the same technology, if the agreement Heatsource had with Diversified Control called for a five-zone heater with one temperature specification and Bechtel Jacobs sought production of a five-zone heater with a different temperature specification pursuant to an entirely separate agreement, *different* heaters would be the specific subject matter of each agreement. We thus conclude that the dispute regarding whether a separate representation of payment was made, and the dispute regarding whether the agreement with Diversified Control covered the same temperature specification as the purported separate agreement with Bechtel Jacobs, are material disputes bearing on whether the unjust enrichment claim is based on an agreement separate from the express contracts and subcontracts. These factual issues thus are material to the question of whether the claim should have been dismissed by reason of an express contract covering the subject matter of the dispute.

¶ 13 We acknowledge that the evidence accepted as true shows that there were express contracts or subcontracts between Bechtel Jacobs and Diversified Metal, and between Diversified Metal and Diversified Control, that covered the second heater, including the specific temperature specification for the second heater,[7] contracts to which Heatsource was not a party. We also have considered Bechtel Jacobs's argument that Heatsource's only remedy was against Diversified Control, the entity with which Heatsource had an actual contract.[8] But, as

6. Bechtel Jacobs claims the trial court never wavered in its position that express contracts covered the subject matter of both the unjust enrichment and the implied-in-fact contract claims, based on the trial court's ultimate conclusion that the implied-in-fact contract claim was barred by express contracts and subcontracts covering the same technology. The trial court did, however, identify one factual dispute, and we have identified another based on the temperature specifications, as discussed *infra,* and we conclude such disputes are material to the legal issues that need to be resolved.

7. We agree that the evidence accepted as true shows Bechtel Jacobs never changed the temperature specifications that were part of the contract between it and Diversified Metal, but it does not necessarily follow that Heatsource did not receive two different temperature specifications from the relevant entities.

8. Bechtel Jacobs cites *American Towers Owners Association, Inc. v. CCI Mechanical, Inc.,* 930 P.2d 1182 (Utah 1996), to support its position that a stranger to a contract may be barred from an unjust enrichment claim if an express con-

Heatsource bases its unjust enrichment claim on an alleged separate representation of payment from Bechtel Jacobs and on the claim that the separate agreement included a different temperature specification, and because these material facts are in dispute, we conclude the express contracts do not necessarily bar the claim, depending on how the disputed factual issues are ultimately resolved. *See generally Commercial Fixtures & Furnishings, Inc. v. Adams,* 564 P.2d 773, 774 (Utah 1977); *Baker v. Holland Furnace Co.,* 95 Utah 396, 81 P.2d 1114, 1118 (1938); *Knight v. Post,* 748 P.2d 1097, 1098–1101 (Utah Ct.App.1988).

■ ¶ 14 Additionally, while it is unclear whether the agreement between Heatsource and Diversified Control covered the same heater as the agreement Heatsource had with Bechtel Jacobs, it is also unclear whether that agreement even provided a viable separate legal remedy for Heatsource to pursue, especially when Heatsource claims it was fully compensated by Diversified Control for the first heater and Heatsource has not claimed that Diversified Control represented it would compensate Heatsource for production of the second heater. *Cf. UTCO Assocs., Ltd. v. Zimmerman,* 2001 UT App 117, ¶¶ 25–28, 27 P.3d 177 (evaluating, in a case where the plaintiff did not exhaust all legal remedies before pursuing a promissory estoppel claim, whether it would have been "fruitless" to pursue a remedy through the defendant's bankruptcy proceeding), *cert. de-*

*nied,* 32 P.3d 249 (Utah 2001). Thus, these issues need to be resolved before the unjust enrichment claim can be dismissed on the basis of an express contract or a failure to exhaust legal remedies.[9]

## II. Unjust Enrichment

■ ¶ 15 In light of its ruling that an express contract barred the unjust enrichment claim, the trial court did not specifically evaluate whether the evidence accepted as true supported a viable unjust enrichment claim against Bechtel Jacobs. Upon careful review of that evidence accepted as true, in a light most favorable to Heatsource, we conclude the evidence potentially supports an unjust enrichment claim, depending on how the factual issues are resolved.

> Three elements must be present before unjust enrichment may serve as a basis of recovery: [T]here must be (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.

*Concrete Prods. Co. v. Salt Lake County,* 734 P.2d 910, 911 (Utah 1987) (alteration in original) (citation and internal quotation marks omitted).

tract between different parties covers the subject matter of the dispute. *See id.* at 1184–85, 1187, 1192–93. *American Towers* is distinguishable, however, because it involved plaintiffs claiming to be third-party beneficiaries of construction contracts and did not involve a claim that there was a separate agreement or representation to support the plaintiffs' unjust enrichment claim. *See id.*

Bechtel Jacobs also cites *Maloney v. Therm Alum Industries, Corp.,* 636 So.2d 767 (Fla.Dist.Ct.App.1994), *overruled on other grounds by Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.,* 695 So.2d 383 (Fla.Dist.Ct.App.1997), for the proposition "that a subcontractor must pursue 'his direct remedy against the contractor' rather than pursue the landowner (who received the benefit and had contracted with the contractor)." While *Maloney* does stand for this proposition, *Maloney* went on to recognize that a legal remedy against a landowner may be available

under certain factual circumstances if the remedies against the general contractor were exhausted by the plaintiff and the landowner had not already paid the general contractor. *See id.* at 769–70. *See also id.* at 769 (indicating that under the facts of the case it was "premature and therefore improper to permit the subcontractor to pursue an indirect equity claim against the owner" when "the subcontractor ha[d] not exhausted his direct remedy against the contractor").

9. We note that, under the circumstances of this case, exhaustion of legal remedies is not a bar to the assertion of unjust enrichment claims against Bechtel Jacobs and Diversified Metal. Because the court found that no express or implied contract existed between Heatsource and either Bechtel Jacobs or Diversified Metal, there simply were no legal remedies associated with breach of contract claims against these parties that Heatsource has failed to exhaust.

¶ 16 Regarding the first element, the evidence accepted as true shows that Heatsource participated in producing the second heater that was accepted as part of the System by Bechtel Jacobs. Thus a benefit was clearly conferred on Bechtel Jacobs by Heatsource, which benefit Bechtel Jacobs retained. For the second element, the facts also support that Bechtel Jacobs had knowledge of the benefit it received based on its acceptance of the second heater for use in the System.

¶ 17 The evidence accepted as true reflects a material dispute regarding the third element, i.e., whether it would be inequitable for Bechtel Jacobs to not compensate Heatsource for the second heater, which Bechtel Jacobs accepted and retained. Utah case law reflects that the "inequitable" element of an unjust enrichment claim is satisfied if there is a representation of payment or a misleading act. *See Knight,* 748 P.2d at 1101 ("In *Commercial Fixtures,* the Utah Supreme Court defined inequitable circumstances as: '[t]he mere fact that a third person benefits from a contract between two others does not make such third person liable in quasi-contract, unjust enrichment, or restitution. *There must be some misleading act, request for services, or the like, to support such an action.* Mere failure of performance by one of the contracting parties does not give rise to a right of restitution.' ") (alteration and emphasis in original) (citation omitted).

¶ 18 The evidence accepted as true indicates that Heatsource claims a Bechtel Jacobs employee made a representation of payment, or at least a misleading statement regarding payment, to wit, " 'the money truck [would] back[ ] up to the building' " if Heatsource produced the second heater. And the trial court recognized that there is a dispute over whether this statement was made. If this statement was made to Heatsource, Heatsource could reasonably have expected payment from Bechtel Jacobs in exchange for its completion of the second heater, which supports that it would be unjust not to compensate Heatsource for the benefit Bechtel Jacobs received from the second heater. Additional evidence, however, indicates that, while expecting payment, Heatsource knew Bechtel Jacobs itself would not provide the compensation. This evidence is contradictory, and when viewed in a light most favorable to Heatsource, it demonstrates that a material dispute exists regarding whether it would be inequitable for Bechtel Jacobs not to compensate Heatsource for the second heater.

¶ 19 While a dispute exists, as identified above, we note that other evidence will also need to be considered in the analysis of whether nonpayment would be inequitable, namely the fact that Heatsource had already started work on the second heater before any alleged representation of payment was made and the fact that Bechtel Jacobs already paid Diversified Metal for the heaters pursuant to their express contract. A persuasive case cited by Bechtel Jacobs, *Maloney v. Therm Alum Industries Corp.,* 636 So.2d 767 (Fla. Dist.Ct.App.1994), *overruled on other grounds by Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.,* 695 So.2d 383 (Fla.Dist.Ct.App.1997), and Utah's Residence Lien Restriction and Lien Recovery Fund Act (LRFA), *see* Utah Code Ann. §§ 38–11–102(16), –107(1)(a), –204(4)(b) (Supp.2008), address the issue of whether landowners or homeowners can be liable to subcontractors after paying a general contractor in full. *See Maloney,* 636 So.2d at 769–70; *Sill v. Hart,* 2007 UT 45, ¶ 14, 162 P.3d 1099 (describing the LRFA as "protect[ing] homeowners from having to pay twice for the same improvements" because it "provid[es] that once the homeowner has paid the general contractor in full, the homeowner and the home are then free from claims and liens of subcontractors who also worked on the home"). While not directly applicable in this case, the reasoning and policy behind the Utah statute and Florida opinion support the proposition that requiring double payment by one who has already fully paid a general contractor would in and of itself be inequitable. But a separate representation or misleading statement regarding payment, as may have been made here, would undercut any suggestion that it is inequitable for Bechtel Jacobs to retain the second heater without compensating Heat-

source. *See Commercial Fixtures,* 564 P.2d at 774; *Knight,* 748 P.2d at 1101.

## CONCLUSION

 ¶ 20 While we otherwise affirm, we reverse the trial court's grant of summary judgment in favor of Bechtel Jacobs on Heatsource's unjust enrichment claim.[10] And we remand for such further proceedings as may now be appropriate.

¶ 21 I CONCUR: PAMELA T. GREENWOOD, Presiding Judge.

¶ 22 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Judge.

---

**10.** With regard to the unjust enrichment claim against Diversified Metal, Diversified Metal also claims that its statement of the undisputed facts was accepted as true due to Heatsource's rule 7 failures. The trial court's ruling on Diversified Metal's summary judgment motion, however, does not address rule 7 violations, and Diversified Metal has not pointed to an order that specifically dealt with rule 7. From the trial court's statements at oral argument on the summary judgment motions, though, it seems the court had decided rule 7 was not followed by Heatsource in responding to Diversified Metal's summary judgment motion and memorandum. If Diversified Metal's statement of disputed facts was deemed admitted, the facts do not support a viable unjust enrichment claim against Diversified Metal because the facts do not support the conclusion that Diversified Metal made a separate representation of payment or misleading statement regarding payment. Even if Diversified Metal's statement of the undisputed facts was not deemed admitted, Heatsource's appeal on the unjust enrichment claim against Diversified Metal fails due to inadequate briefing in its opening brief. *See generally* Utah R.App. P. 24(a)(9), (c); *Allen v. Friel,* 2008 UT 56, ¶ 8, 194 P.3d 903. Either way, then, we do not disturb the summary judgment in favor of Diversified Metal.