2018 UT App 148

## THE UTAH COURT OF APPEALS

MIKE VANDER VEUR,
Appellant,
*v.*
GROOVE ENTERTAINMENT TECHNOLOGIES,
Appellee.

Opinion
No. 20160153-CA
Filed August 9, 2018

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 130908551

Nan T. Bassett and S. Shane Stroud, Attorneys
for Appellant

Cheylynn Hayman, Attorney for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

POHLMAN, Judge:

¶1 Mike Vander Veur appeals the district court's grant of summary judgment to Groove Entertainment Technologies. Groove terminated Vander Veur's employment in June 2013. Vander Veur argues that the district court incorrectly granted summary judgment to Groove on his claims for breach of the implied covenant of good faith and fair dealing regarding certain commissions and a bonus to which he claims entitlement. He also argues that the district court erred in granting summary judgment in Groove's favor on its unjust enrichment claim, which was based on Vander Veur's retention of certain commission draws following his termination. We affirm in part, vacate in part, and remand for further proceedings.

BACKGROUND[1]

¶2 Around September 2010, Groove, a company that sells television services to customers, such as hotels, hired Vander Veur as a sales representative. Vander Veur's duties included, among other things, producing leads and generating new business by signing new customers for television services.

¶3 In October 2012, Vander Veur and Groove entered into a Sales Representative Compensation Agreement (the Compensation Agreement). Among its relevant provisions, the Compensation Agreement provided that it would be effective as of October 15, 2012, and that it would "remain in effect as long as [Vander Veur] is employed by Groove." The agreement further provided that "Groove [would] pay [Vander Veur] a commission for each Qualifying Sale deemed commissionable as defined in this Agreement." The Compensation Agreement defined "Qualifying Sale" as "a commissionable sale where the minimum margin requirements are met and the installation is complete." It also explained that Vander Veur was entitled to biweekly draws against his earned commissions and that these draws would be deducted from his earned commissions.

¶4 Vander Veur also signed an Employee Handbook Acknowledgement on three separate occasions—in December 2010, December 2011, and April 2013. Each acknowledgement explained that, notwithstanding the policies and procedures detailed in the handbook, Vander Veur's employment was at will; both Groove and Vander Veur had the right to terminate

---

1. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (quotation simplified).

their employment relationship at any time, with or without notice or cause.

¶5     Groove terminated Vander Veur's employment in June 2013. At the time of termination, Vander Veur was in the process of procuring six commissionable sales. While Vander Veur had apparently obtained either written sales contracts or verbal commitments for each sale, it is undisputed that at the time of his termination none of those sales had been installed. The first of the six installations took place in July 2013, approximately one month after Vander Veur's termination, and all six sales were installed within three months of his termination. Groove did not pay Vander Veur any commission for the six sales.

¶6     In addition, before his termination, Vander Veur was working with Groove's lead sales representative and another Groove employee to complete a large sale to provide satellite services to a hotel. In connection with this sale, Groove stood to be paid a sizeable bonus from Showtime (the Showtime bonus). Groove's president, Vander Veur, and the lead sales representative apparently agreed that, after paying $1,000 to the other Groove employee who had assisted with the sale, they would split the Showtime bonus evenly between them.[2] Groove did not receive the bonus from Showtime until nearly one month after Vander Veur's termination, and Groove did not share any portion of it with Vander Veur.

¶7     After his termination, Vander Veur filed suit against Groove. Among other things, he alleged that Groove had breached the implied covenant of good faith and fair dealing in the compensation and bonus agreements by terminating him for the express purpose of avoiding paying him the six commissions

---

2. Vander Veur contends that he discussed this arrangement with the lead sales representative; he did not discuss it directly with Groove's president.

and the Showtime bonus.[3] Groove counterclaimed, asserting breach of contract and unjust enrichment claims against Vander Veur on the basis that Vander Veur had retained certain draw monies that exceeded the commissions he had earned prior to his termination. Groove's breach of contract claim was based upon a 2013 Sales Representative Agreement (the 2013 Agreement) that Vander Veur had not signed, and it pleaded its unjust enrichment claim in the alternative.

¶8    Groove moved for summary judgment on Vander Veur's claims as well as its unjust enrichment counterclaim. As to the six commissions, Groove argued that Vander Veur could not rely on the implied covenant of good faith and fair dealing to claim entitlement to the commissions in light of "the parties' course of dealing and [Vander Veur's] at-will employment status." Groove pointed to the plain language of the Compensation Agreement, asserting that the agreement unambiguously stated that commissions were not earned until installation. Groove also characterized Vander Veur's breach of the implied covenant claim as an improper attempt to have the court "retroactively re-craft more favorable payment terms" than those to which Vander Veur agreed, asserting that it undoubtedly never would have agreed to pay Vander Veur commissions for post-termination installations had it considered and addressed the issue in the Compensation Agreement. Indeed, Groove claimed that it had "*never* paid commissions to sales representatives for installations that were completed after the

---

3. Vander Veur also asserted claims for breach of contract and wrongful termination in violation of public policy, but he voluntarily dismissed those claims during the summary judgment proceedings. Likewise, on appeal, Vander Veur initially alleged that Groove had breached the implied covenant of good faith and fair dealing by terminating his employment to avoid paying him another bonus apart from the Showtime bonus, but he abandoned this claim in his reply brief.

termination of employment." Groove further argued that Vander Veur could not "use the covenant to pencil in a 'good cause' termination restriction" in light of the "numerous acknowledgements he signed in which he expressly recognized that his employment was at-will."

¶9    Regarding the Showtime bonus, Groove similarly argued that Vander Veur's claim for breach of the implied covenant was unavailing where Groove "never would have agreed to pay Vander Veur" that bonus "after the termination of his employment." In its summary judgment reply memorandum, Groove also contended that the claim should be dismissed for the alternative and independent reason that there was "no enforceable contract" as to the Showtime bonus, because there was no meeting of the minds on whether Vander Veur would have been entitled to the bonus post-termination.

¶10    Finally, Groove argued that it was entitled to judgment as a matter of law on its unjust enrichment claim. Groove accepted for purposes of summary judgment that, as Vander Veur claimed in his answer, the 2013 Agreement was "inapplicable to him," and Groove argued that it met the three requirements to establish unjust enrichment. *See generally Rawlings v. Rawlings*, 2010 UT 52, ¶ 29, 240 P.3d 754 (listing the "three elements" required to prove "[a] claim for unjust enrichment in Utah").

¶11    In response, Vander Veur argued that summary judgment was inappropriate on his breach of the implied covenant claims because "[a] rational jury could determine based on the facts" that Groove's claimed reason for terminating him was mere pretext and that his termination, "executed on the eve of him becoming eligible for significant commission and bonus payments," was instead done "to deprive him of the commissions and bonuses he was to receive once the jobs he had sold were installed." Regarding Groove's counterclaims, Vander Veur argued that Groove was not entitled to judgment on its unjust enrichment claim for two reasons. First, he argued that

because an unjust enrichment claim is cognizable only if no contract controls, Groove could not prevail simply by "ignor[ing]," for purposes of summary judgment, the 2013 Agreement on which its breach of contract counterclaim was based. Rather, Vander Veur contended that Groove should have to "withdraw its breach of contract claim," or, at the very least, be required to explain "why it has no legal remedy under its breach of contract cause of action prior to proceeding with its unjust enrichment claim." Second, he argued that Groove had failed to prove its unjust enrichment claim primarily because the existence of his own claims made the calculation of the benefit conferred to him and his liability for it "impossible," where he could be entitled to offset as well as pre- and postjudgment interest, should he prevail.

¶12   The district court granted summary judgment to Groove on all issues, dismissing Vander Veur's claims with prejudice. It also entered judgment in Groove's favor for unjust enrichment in the amount of $2,925.04, plus prejudgment interest. Vander Veur appeals.

## ISSUES AND STANDARD OF REVIEW

¶13   Vander Veur argues that the district court improperly granted summary judgment in favor of Groove on his claims for breach of the implied covenant of good faith and fair dealing as well as Groove's unjust enrichment claim. Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). "An appellate court reviews a district court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *ZB, N.A. v. Crapo*, 2017 UT 12, ¶ 11, 394 P.3d 338 (quotation simplified).

ANALYSIS

## I. Breach of the Implied Covenant of Good Faith and Fair Dealing

¶14 Vander Veur argues that the district court incorrectly granted Groove summary judgment on his claims for breach of the implied covenant of good faith and fair dealing. Although he acknowledges the at-will nature of his employment with Groove, he nevertheless asserts that terminating his employment for the express intention of depriving him of the fruits of certain compensation agreements goes to the core of the covenant that the Utah Supreme Court identified in *Young Living Essential Oils, LC v. Marin*, 2011 UT 64, 266 P.3d 814, and is on that basis impermissible. *See id.* ¶ 9 (explaining that the covenant's "core function" is requiring that a party to a contract "refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract" (quotation simplified)).

¶15 Groove disagrees, arguing that Vander Veur seeks to circumvent the terms of the agreements at issue and the at-will nature of his employment by using the covenant to create a new term or obligation to which it clearly did not, and never would have, agreed—that is, paying Vander Veur commissions and bonuses for sales he generated but that were completed post-termination. Because Vander Veur has not established that Groove would have "*undoubtedly* . . . agreed to the post-termination payment arrangement" that he seeks, Groove asserts that Vander Veur "has not satisfied his substantial threshold burden" to survive summary judgment below or prevail on appeal.

¶16 The parties therefore disagree about the applicability of the covenant in the circumstances present here, particularly given the at-will nature of Vander Veur's employment. To determine whether the district court erred in granting summary judgment on Vander Veur's claims for breach of the implied

covenant, we therefore must decide the extent to which the covenant may be applied in this case, where an at-will employee is seeking compensation for commissions to which he claims he would have been entitled pursuant to a compensation agreement had his employment not been terminated for the purpose of depriving him of those commissions.

¶17    Despite Vander Veur's contention to the contrary, this appears to be a matter of first impression for our courts. As we explain below, *see infra* ¶¶ 19–30, Utah's appellate courts have recognized the applicability of the implied covenant of good faith and fair dealing to at-will employment relationships, but have not yet determined whether the implied covenant is available to provide relief in these circumstances.

¶18    We therefore begin by discussing the function of the covenant, and we ultimately conclude that the covenant may be employed in limited circumstances to protect an at-will employee's right to receive compensation for work performed pursuant to a compensation agreement attendant to the at-will employment relationship. We then apply this principle to determine whether dismissal of Vander Veur's implied covenant claims regarding entitlement to the six sales commissions and the Showtime bonus was proper. We ultimately conclude that it was improper to dismiss Vander Veur's claims as to the six commissions and the Showtime bonus.

A.    At-Will Employment and the Implied Covenant of Good Faith and Fair Dealing

¶19    Vander Veur asserts that his termination violated the implied covenant of good faith and fair dealing, because it was carried out for the specific purpose of depriving him of his right to the compensation he was to receive under the Compensation Agreement and the Showtime bonus oral contract. This case therefore involves the intersection of an at-will employment relationship, where the employee may be terminated with or

without cause, and the applicability of the implied covenant to obligations inherent in separate agreements attendant to an at-will employment relationship.

¶20 It is well-settled that the implied covenant of good faith and fair dealing inheres in every contract, *see Nelson v. Target Corp.*, 2014 UT App 205, ¶ 28, 334 P.3d 1010, even contracts associated with employment, *see Cook v. Zions First Nat'l Bank*, 919 P.2d 56, 60–61 (Utah Ct. App. 1996); *Dubois v. Grand Central*, 872 P.2d 1073, 1078–79 (Utah Ct. App. 1994). The violation of this covenant "gives rise to a claim for breach of contract." *Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 43, 104 P.3d 1226.

¶21 That said, the covenant has a limited role in contractual disputes. *See Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶ 9, 266 P.3d 814. Its "core function" is to impose on parties the duty to perform in good faith the obligations arising from and created under the contract and to "refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract." *Id.* (quotation simplified); *see id.* ¶¶ 8–9 (stating that the covenant's "significance lies in its function of inferring as a term of every contract a duty to perform in the good faith manner that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute," and explaining that this duty "advances the core function of the covenant, as no one would reasonably accede to a contract that left him vulnerable to another's opportunistic interference with the contract's fulfillment"). The covenant may not be used to "create new, independent rights or duties not agreed upon by the parties," *see Cook*, 919 P.2d at 60 (quotation simplified), or to create obligations that would be "inconsistent with express contractual terms," *Young Living*, 2011 UT 64, ¶ 10 (quotation simplified); *see also id.* (further explaining that "[w]here the parties themselves have agreed to terms that address the circumstance that gave rise to their dispute, . . . the court has no business injecting its own sense of what amounts to 'fair dealing'"). Rather, the covenant may be used to allow

recovery under a contract only for actions taken that are inconsistent "with the agreed common purpose and the justified expectations of the other party." *See Oakwood Village*, 2004 UT 101, ¶ 43 (quotation simplified).

¶22 However, Vander Veur was an at-will employee. At-will employment relationships are those "entered into for an indefinite period of time," *Cabaness v. Thomas*, 2010 UT 23, ¶ 78, 232 P.3d 486 (quotation simplified), where there is no expectation between the parties that the employment will continue for a "specified term of duration," *see Cook*, 919 P.2d at 60. In such relationships, both the employer and the employee have the right to "terminate the employment for any reason (or no reason) except where prohibited by law." *See Cabaness*, 2010 UT 23, ¶ 78 (quotation simplified); *see also Nelson*, 2014 UT App 205, ¶¶ 17, 28. As relevant here, "any reason" includes an employer's right to terminate an employment relationship to relieve itself of the obligation to continue paying compensation and benefits to an employee for the employee's continued performance. *See generally Caton v. Leach Corp.*, 896 F.2d 939, 947 (5th Cir. 1990) (explaining that a benefits agreement attendant to an at-will employment relationship does "not restrict the parties' contractual right to at-will termination"); *Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109, 112 (2d Cir. 1985) (describing the at-will employment relationship as one in which "performance and the distribution of benefits occur simultaneously, and neither party is left high and dry by the termination"). In this regard, we have explained that the implied covenant cannot be used to "inject a term of years into [an at-will employment] contract when the parties expressly agreed to an at-will relationship terminable at any time." *Anderson v. Larry H. Miller Commc'ns Corp.*, 2012 UT App 196, ¶ 18, 284 P.3d 674.

¶23 Utah has recognized the availability of breach of the implied covenant of good faith and fair dealing as a cause of action to protect justified expectations arising from agreements attendant to an at-will employment relationship. *See Cook*, 919

P.2d at 60–61. For example, in *Cook,* an at-will employee sued her employer, alleging that the employer breached the implied covenant when it refused to permit her to use her sick leave. *See id.* at 58–59. Although the trial court granted summary judgment in favor of Cook's employer, *see id.*, this court determined that the trial court had erred in dismissing her implied covenant claim on summary judgment, *see id.* at 60–61. We first determined that the parties had "an express contract" as to sick leave. *Id.* at 59. We then determined that Cook could assert a breach of the implied covenant claim under those circumstances, where, rather than using the implied covenant to attempt to create new duties or rights to which the parties had not agreed, Cook's allegations centered on whether her employer had unreasonably and intentionally impaired her "right to receive the fruits of the [existing sick leave] contract" when it refused to permit her to use her accrued sick leave. *See id.* at 60. In other words, we concluded her allegations implicated the "core function" of the implied covenant—ensuring the parties performed the obligations under their contract in good faith. *Compare id.* at 60, *with Young Living*, 2011 UT 64, ¶ 9 (describing the "core function" of the implied covenant). On this basis, we determined that breach of the implied covenant was available to Cook as a cause of action.

¶24 We are persuaded that the reasoning in *Cook* should be extended to the narrow circumstances present here. Like the appellant in *Cook*, Vander Veur and Groove entered into agreements attendant to Vander Veur's at-will employment—compensation agreements—that created and described distinct rights and obligations related to the payment of certain benefits, apart from the general at-will relationship. *See Cook*, 919 P.2d at 60 ("That Cook was an at-will employee does not negate the existence of the sick leave contract between her and [the employer]."); *see also Arbeeny v. Kennedy Exec. Search, Inc.*, 893 N.Y.S.2d 39, 44 (App. Div. 2010) (observing that "an employee's contract for payment of commissions creates rights distinct from the employment relation, and obligations derived from the

covenant of good faith implicit in the commission contract may survive the termination of the employment relationship" (quotation simplified)). Also like in *Cook*, Vander Veur's argument below and on appeal is that Groove, in bad faith, took specific action to impair his ability to "receive the fruits" of the Compensation Agreement and the Showtime bonus agreement. (Quotation simplified.) In this regard, Vander Veur's arguments, like Cook's, rest on and implicate the "core function" of the implied covenant; he asserts a right to good faith performance of purportedly already existing contractual obligations under the compensation and bonus agreements, not a right to add new terms or create new obligations seemingly inconsistent with the agreements or the at-will nature of his employment. *See Young Living*, 2011 UT 64, ¶¶ 8–10; *Cook*, 919 P.2d at 60.

¶25    In extending the reasoning in *Cook*, we emphasize that this extension, and the window for recovery under it, is narrow. The implied covenant may not be used as an avenue to avoid termination of the at-will employment relationship itself. While an at-will employee may have a right to certain benefits arising under an attendant compensation agreement, the employee has no right to continued tenure under an at-will employment relationship. *See Wakefield*, 769 F.2d at 112 (stating that the covenant of good faith "should not be implied as a modification of an employer's right to terminate an at-will employee because even a whimsical termination does not deprive the employee of benefits expected in return for the employee's performance"); *see also Caton*, 896 F.2d at 946 (stating that "the implied good faith covenant may not obliterate rights, such as at-will termination"). The implied covenant therefore does not affect or alter the employer's right to terminate its relationship with an at-will employee for any reason or no reason at all. *See Nelson v. Target Corp.*, 2014 UT App 205, ¶ 28, 334 P.3d 1010.

¶26    Instead, we decide today only that breach of the implied covenant of good faith and fair dealing may be asserted for the limited purpose of protecting from opportunistic interference an

employee's justified expectations in receiving the fruits of a compensation agreement attendant to the at-will employment relationship after that relationship has been terminated. *See Cook v. Zions First Nat'l Bank*, 919 P.2d 56, 60 (Utah Ct. App. 1996) ("Under the covenant of good faith and fair dealing, the parties constructively promised that they would not intentionally do anything to impair the other party's right to receive the fruits of the contract. Compliance with this covenant depends upon the justified expectations of the parties." (quotation simplified)); *see also Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 43, 104 P.3d 1226. This means that the employee must demonstrate that (1) his or her employment was terminated in bad faith to deprive him or her of benefits under a compensation agreement and (2) he or she does, in fact, have a justified expectation for receiving the benefits to which entitlement is claimed. Of the latter, the employee will typically be required to demonstrate that, but for the bad faith termination, he or she would have received the benefits under the terms of his or her compensation agreement because of his or her past, related work. In this regard, we are persuaded by the reasoning of other jurisdictions that have recognized a similarly limited role for the implied covenant of good faith and fair dealing to protect the rights created in agreements attendant to an at-will employment relationship.

¶27    For example, in *Fortune v. National Cash Register Co.*, 364 N.E.2d 1251 (Mass. 1977), an at-will salesman received a termination notice immediately following a large sale to which the salesman otherwise would have received sizeable "bonus credits" under a compensation contract attendant to the salesman's employment. *Id.* at 1253–54 (quotation simplified). On appeal, the employer challenged the submission of the issue of a bad faith termination to the jury. *Id.* at 1255. The Massachusetts Supreme Judicial Court held that a written contract regarding compensation in an at-will employment relationship "contains an implied covenant of good faith and fair dealing." *Id.* at 1255–56. In this regard, the court determined that

an employer acts in bad faith when it "seeks to deprive the agent of all compensation by terminating the contractual relationship when the agent is on the brink of successfully completing the sale," or when the employer attempts through a termination to "deprive the agent of any portion of a commission due the agent." *See id.* at 1256–58. Either example of bad faith termination constitutes a breach of the implied covenant, affording the employee a monetary remedy on the express contract. *See id.*; *see also Cataldo v. Zuckerman*, 482 N.E.2d 849, 854–56 (Mass. App. Ct. 1985) (interpreting *Fortune*, and concluding that the *Fortune* principle applies to protect an at-will employee from a bad faith discharge aimed at depriving the employee of an "identifiable, future benefit reflective of past services," such as a promised equity interest in future projects that constituted a "continuing inducement" and "part of the compensation" for an employee's day-to-day work (quotation simplified)).

¶28    Similarly, in *Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109 (2d Cir. 1985),[4] an employee claimed that his employer

---

4. There is some disagreement about whether *Wakefield* is still good law in New York. Following *Wakefield*'s issuance, the New York Court of Appeals issued *Gallagher v. Lambert*, 549 N.E.2d 136 (N.Y. 1989), which involved a claim for breach of fiduciary duty of good faith and fair dealing based on a stock buy-back agreement and the employer's alleged act of terminating the employee to buy back the employee's stock at a lower price. *Id.* at 136–37. The majority in *Gallagher* ignored *Wakefield* altogether. *Id.* at 137–38. Since then, there has been disagreement regarding the applicability of *Wakefield*. *See, e.g.*, *Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 239 (S.D.N.Y. 1992) (discussing the disagreement about the applicability of *Wakefield*). Nevertheless, courts have continued to rely upon *Wakefield*, at least so long as it can be distinguished from *Gallagher*. *See id.* at 239–40; *see also Arbeeny v. Kennedy Exec.*

(continued…)

terminated his employment in contravention of the implied covenant of good faith and fair dealing "to avoid paying him commissions on sales that were completed but for formalities." *Id.* at 111–12. Although the employer claimed that the employee's at-will status effectively resolved this issue, *id.* at 112, the Second Circuit Court of Appeals disagreed. Instead, the court reasoned that while the employee could not "recover for his termination per se," "the contract for payment of commissions create[d] rights distinct from the employment relation" that could "survive the termination of the employment relationship." *Id.* (quotation simplified). The court observed that while the covenant could not be employed to modify the employer's right to terminate the employee, it could protect the employee from a termination done "for the purpose of avoiding the payment of commissions which are otherwise owed [under a compensation agreement]," because "an unfettered right to avoid payment of earned commissions in the . . . employer creates incentives counterproductive to the purpose of the contract itself." *Id.* at 112–13.[5]

---

(…continued)
*Search, Inc.*, 893 N.Y.S.2d 39, 44–45 (App. Div. 2010). In any event, we find *Wakefield*'s reasoning persuasive.

5. *See also Caton v. Leach Corp.*, 896 F.2d 939, 946–47 (5th Cir. 1990) (observing that the implied covenant of good faith "protects the parties' expectations to receive the contractual benefits" created in agreements apart from the at-will employment relationship, and concluding that, should the compensation agreement create "rights or benefits for a sales representative upon the performance of specified services, then [the employee] may be able to recover damages" for his performance of those services); *Suzuki v. Abiomed, Inc.*, 253 F. Supp. 3d 342, 347–51 (D. Mass. 2017) (characterizing earned compensation as including "an identifiable, future benefit reflective of past services," such as a

(continued…)

¶29　In the foregoing cases, while the employee did not have a right to continued employment to earn commissions or benefits, the employee did have (or could have had) the right under the attendant compensation agreements not to be terminated for the bad faith purpose of depriving the employee of commissions the employee would have received. The courts reasoned that the

---

(…continued)

promised "interest in future projects [as] a continuing inducement to work" for an employer, and concluding that an employer "may be accountable to [an employee] for unpaid compensation if it turns out [the employee] was terminated in bad faith and the compensation is connected to work already performed" (quotation simplified)); *Geysen v. Securitas Sec. Services USA, Inc.*, 142 A.3d 227, 241–42 (Conn. 2016) (recognizing the availability of a breach of the implied covenant of good faith and fair dealing claim "when the termination of an [at-will] employee was done with the intent to avoid the payment of commissions," and concluding that the plaintiff had "stated a legally sufficient claim for breach of the implied covenant" where he asserted that the defendant violated the implied covenant "by failing to comply with the plaintiff's reasonable expectation that the defendant would pay commissions earned by the plaintiff" under the commission contract attendant to the at-will employment relationship (quotation simplified)); *Arbeeny*, 893 N.Y.S.2d at 44 (stating that "the at-will doctrine should not preclude [a] plaintiff from raising a breach of contract claim for earned commissions" under the implied covenant and that "while an at-will employee cannot recover for termination per se, an employee's contract for payment of commissions creates rights distinct from the employment relation, and obligations derived from the covenant of good faith implicit in the commission contract may survive the termination of the employment relationship" (quotation simplified)).

implied covenant appropriately protected an employee's justified expectations under attendant compensation agreements from an employer's bad faith attempt—often through terminating the employment relationship—to avoid paying compensation to the employee for work performed. In our view, this reasoning comports both with the nature of at-will employment relationships and the reasoning we expressed in *Cook*. *See Cook*, 919 P.2d at 60; *see also Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶ 9, 266 P.3d 814 (explaining that the duty to perform contractual obligations in good faith under the covenant is not offensive, "as no one would reasonably accede to a contract that left him vulnerable to another's opportunistic interference with the contract's fulfillment"). Thus, while an employer may terminate the at-will employment relationship at any time and for any reason, the employer may not deprive an employee of commissions or benefits he or she would have received under the terms of the compensation agreement for work already performed by terminating the employee in bad faith to avoid paying those commissions or benefits.

¶30    Having decided that the implied covenant of good faith and fair dealing may be applicable in the limited circumstances present here, we therefore proceed to address each agreement at issue—the six commissions under the Compensation Agreement and the compensation under the Showtime bonus oral agreement.

B.    The Six Commissions and the Compensation Agreement

¶31    Vander Veur argues that the district court incorrectly granted summary judgment against him on his claim that Groove breached the implied covenant of good faith and fair dealing by terminating his employment to avoid paying him commissions on the six sales he had procured, but which had not yet been installed, before his termination. The district court dismissed this claim. The court reasoned that Vander Veur had to "establish that the parties undoubtedly would have agreed" to

pay Vander Veur for the six commissions post-termination had they "considered and addressed it at the outset," and it determined that "[t]his requirement is fatal to Vander Veur's claim." The court then concluded that the undisputed facts demonstrated that Groove would not have agreed to such a covenant and that "[t]o hold that Groove might have an obligation to pay commission payments to Vander Veur would impose a new affirmative obligation on Groove that is outside the [Compensation] Agreement and unsupported by the course of conduct between the parties."

¶32　We concluded above that an at-will employee may assert a claim under the implied covenant to recover compensation he or she would have received under the terms of his or her compensation agreement but for the employer's bad faith termination of the at-will relationship for the purpose of depriving the employee of that compensation. *See generally Cook v. Zions First Nat'l Bank*, 919 P.2d 56, 60 (Utah Ct. App. 1996). In this regard, the implied covenant protects the at-will employee from an employer using an at-will termination to specifically avoid its obligations under an attendant compensation agreement. Vander Veur claims that Groove sought to deprive him of the commissions he would have received through his work securing the sales agreements, and to which he claims entitlement under the Compensation Agreement, by terminating his employment for the specific purpose of avoiding paying him the commissions before the triggering event for payment of the commissions—installation—occurred. As we explained, this is the type of claim that implicates the core of the implied covenant and of which the covenant is singularly designed to protect. On that basis, no agreement between the parties about the implied covenant's applicability in these circumstances was required, and the district court erred by determining that the success of Vander Veur's implied covenant claim turned on whether Groove would have agreed to pay Vander Veur the commissions post-termination.

¶33 We therefore vacate the district court's dismissal of the implied covenant claim for the six commissions and remand for further proceedings. To be sure, we express no opinion on whether Vander Veur might be ultimately successful in proving his claim in the district court, should the case proceed to trial. But for purposes of this appeal, it is enough that the court erred in its application of the implied covenant to the circumstances of this case.

C.     The Showtime Bonus

¶34 Vander Veur also argues that the district court erred when it dismissed his breach of the implied covenant claim as to the Showtime bonus. The district court provided two alternatives for its dismissal of this claim. First, the court determined that it was "undisputed that Groove and Vander Veur would not have agreed to a covenant that provided for payment of the Showtime bonus after Vander Veur was terminated from Groove," and that to conclude that Groove "might have an obligation to pay a post-termination Showtime bonus payment to Vander Veur would impose a new affirmative obligation on Groove" that was unsupported by the parties' course of conduct. In the alternative, the court concluded that "there was no enforceable contract as to the Showtime bonus," because "there was never a meeting of the minds regarding [the] material contract term" of whether Vander Veur would have forfeited the Showtime bonus "if his employment were terminated prior to Groove's receipt of the Showtime funds."

¶35 Given our conclusion above, *supra* ¶¶ 19–30, we cannot sustain the district court's dismissal based on its analysis of the implied covenant; Vander Veur's claim does not create a "new affirmative obligation" for Groove but instead only seeks to assert entitlement to the bonus money based upon purported rights and obligations created by the bonus agreement itself.

¶36    Likewise, we are unable to sustain the district court's dismissal on the basis that there was no enforceable contract between Vander Veur and Groove regarding the Showtime bonus. Groove did not move to dismiss the Showtime bonus claim for lack of an enforceable contract. Rather, the only ground Groove asserted for dismissal of this claim was Vander Veur's failure to demonstrate entitlement to relief under the implied covenant—a proposition necessarily dependent on the Showtime bonus agreement being an enforceable contract. *See Tomlinson v. NCR Corp.*, 2014 UT 55, ¶ 32, 345 P.3d 523 (explaining that our courts "have consistently rejected the notion of a free-standing implied covenant of good faith and fair dealing in the absence of a contract"). Indeed, Groove's contention that the court could reject the bonus claim on the alternative basis that there was not an enforceable contract appeared only as an aside in its summary judgment reply memorandum, underdeveloped and without any meaningful analysis of the relevant facts, pertinent contract principles, and whether the term at issue—agreement regarding post-termination payment—was, in fact, a material term whose absence would be sufficient to render the entire agreement unenforceable. The district court's adoption of the contractual basis as an alternate ground for dismissal closely tracked Groove's limited argument on the point and, accordingly, suffered from similar underdevelopment. Like Groove, the court did not discuss the relevant facts and articulate its reasoning or explain its determination in light of contract law principles.

¶37    As a result, we are unable to discern the legal or the factual basis for the district court's dismissal on this ground. *See Gabriel v. Salt Lake City Corp.*, 2001 UT App 277, ¶¶ 9–19, 34 P.3d 234 (reversing a trial court's summary judgment decision where the trial court's failure to adequately explain the basis of its decision rendered this court unable to determine the decision's correctness); *see also Maak v. IHC Health Services, Inc.*, 2016 UT App 73, ¶¶ 1, 45–46, 372 P.3d 64 (remanding a district court's ruling where this court was "unable to discern the basis for the

district court's conclusion" on a counterclaim issue because there was a lack of "development of the factual record and appropriate legal analysis"); *Tillotson v. Meerkerk*, 2015 UT App 142, ¶ 14, 353 P.3d 165 (vacating a trial court's denial of a motion to intervene where this court was "unable to ascertain the basis of the trial court's decision" and was thereby "prevented from effectively reviewing the trial court's decision" (quotation simplified)). We are also reluctant to affirm dismissal on this ground when it was not a ground on which Groove moved for summary judgment. *Cf. Stevens v. LaVerkin City*, 2008 UT App 129, ¶¶ 29–32, 183 P.3d 1059 (declining to reach an issue raised on appeal because the appellant did not raise it below until his reply to the appellee's memorandum in opposition to his motion to set aside and was therefore not properly before the district court). Thus, while we express no opinion on whether the Showtime bonus agreement was an enforceable contract, we nevertheless vacate the court's dismissal on this ground and remand for further proceedings.

## II. Unjust Enrichment

¶38 Vander Veur also argues that the district court incorrectly granted summary judgment in favor of Groove on the unjust enrichment counterclaim. He asserts that the district court's resolution of the counterclaim was improper for two reasons: (1) Groove had a legal remedy available, as it asserted that a contract governed the resolution of the claim; and (2) even if no contractual remedy was available, Groove failed to prove its entitlement to its unjust enrichment claim. "Claims based on equitable doctrines are mixed questions of fact and law. Accordingly, we defer to a trial court's factual findings unless there is clear error but review its legal conclusions for correctness." *Cottonwood Improvement District v. Qwest Corp.*, 2013 UT App 24, ¶ 2, 296 P.3d 754 (quotations simplified). "However, because of the fact-intensive nature of equitable doctrines, we grant the trial court broader discretion in applying the law to the facts." *Id.* (quotation simplified).

¶39   First, as Vander Veur asserts, because unjust enrichment is an equitable remedy, a party may not recover under unjust enrichment if there is a legal remedy available. *See Help v. Chevron U.S.A. Inc*, 2015 UT 81, ¶ 69, 361 P.3d 63; *E & M Sales West, Inc. v. Diversified Metal Products, Inc.*, 2009 UT App 299, ¶ 8, 221 P.3d 838; *Davies v. Olson*, 746 P.2d 264, 268 (Utah Ct. App. 1987). Vander Veur contends that, because Groove asserted a breach of contract cause of action to recover the commission draws and has otherwise "failed to assert why its breach of contract cause of action did not bear on the trial court's consideration" of summary judgment or withdraw the breach of contract claim altogether, it is barred from recovery under unjust enrichment.

¶40   But Groove's assertion that there was a legal remedy governing the repayment of the draws was disputed between the parties. In its counterclaim, Groove contended that it was entitled to recover these draws under the 2013 Agreement to which Vander Veur never formally agreed in writing. That agreement contained an express provision related to repayment of draws against commissions. In his answer, Vander Veur disputed that he was subject to the 2013 Agreement. Thus, in its summary judgment motion, Groove accepted for purposes of the motion Vander Veur's contention that the 2013 Agreement did not apply to him, and it argued entitlement to judgment as a matter of law solely under the theory of unjust enrichment.

¶41   We have previously observed that concessions made for these limited purposes are acceptable in circumstances involving claims pleaded in the alternative. *See Govert Copier Painting v. Van Leeuwen*, 801 P.2d 163, 167 (Utah Ct. App. 1990) (stating that a party may concede "certain disputed factual issues merely to expedite the resolution of a legal issue" in the summary judgment context). And our supreme court has explained, in the context of election of remedies, that our liberal pleading rules "permit litigants to plead inconsistent theories of recovery in the alternative," that "a court may not require a plaintiff to elect

between inconsistent claims prior to trial," and that it is only once "the fact-finder and the judge have resolved all factual and legal disputes related to the inconsistent theories of liability [that] the plaintiff is then entitled to the one remedy (if any) that is supported by the final determination of the law and the facts." *Helf*, 2015 UT 81, ¶¶ 74–76. Thus, Groove had no obligation to abandon its breach of contract claim before moving for summary judgment, and it was entitled to accept, for purposes of its motion, Vander Veur's contention that the 2013 Agreement did not apply to him.[6]

¶42  Of course, having received judgment on its unjust enrichment claim, Groove may not obtain double recovery by pursuing an alternative claim for breach of contract. "When a final disposition of a case is entered by a district court, any unresolved motions inconsistent with that disposition are deemed resolved by implication." *State v. Mullins*, 2005 UT 43, ¶ 8, 116 P.3d 374; *accord State v. Norris*, 2002 UT App 305, ¶ 8, 57 P.3d 238; *see also Keystone Copper Mining Co. v. Miller*, 164 P.2d 603, 609 (Ariz. 1945) (stating that a final judgment settling the issues raised is one that, even absent express language, disposes of the issues raised "by necessary implication"). Applying this

---

6. Vander Veur cites *Davies v. Olson*, 746 P.2d 264 (Utah Ct. App. 1987), and *E & M Sales West, Inc. v. Diversified Metal Products, Inc.*, 2009 UT App 299, 221 P.3d 838, to support his contentions that Groove "should have withdrawn its breach of contract claim prior to pursuing its unjust enrichment claim" and that Groove "should be required to prove why it has no legal remedy under its breach of contract cause of action prior to proceeding with its unjust enrichment claim." But neither case held either that a party must affirmatively withdraw an alternative claim before proceeding with another or that the party asserting inconsistent alternative theories of recovery must affirmatively prove that it has no legal remedy under the one before proceeding with the other. As a result, his reliance on those cases is misplaced.

principle to the present case, the court's summary judgment order regarding the unjust enrichment claim was the court's final order resolving all the parties' claims. Therefore, even though Groove originally claimed entitlement to the overdrawn commissions on the alternative theories of breach of contract and unjust enrichment, in winning summary judgment on the unjust enrichment claim in the exact amount sought on its contract claim, Groove's alternative breach of contract claim was necessarily resolved by implication through the court's final summary judgment order. *See Mullins*, 2005 UT 43, ¶ 8.

¶43 Second, Vander Veur contends that Groove has failed to prove its unjust enrichment claim on the merits. "Unjust enrichment is an equitable remedy that can be brought to bear where one person confers a benefit on another under circumstances where it would be inequitable for the other to retain the benefit without paying for it." *Simons v. Park City RV Resort, LLC*, 2015 UT App 168, ¶ 15, 354 P.3d 215. To recover for unjust enrichment, the claimant must prove three elements: "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Rawlings v. Rawlings*, 2010 UT 52, ¶ 29, 240 P.3d 754 (quotation simplified).

¶44 The district court determined that Groove had "satisfied its burden of demonstrating each of [the three] elements as a matter of law." In particular, it determined that Groove "conferred a benefit on Vander Veur by advancing to him $2,925.04 more than he earned in commissions"; that Vander Veur admitted that "he received these advance draws from Groove" and understood that it was "'borrowed money'"; and that "Vander Veur's retention of draws he admits he did not earn would be inequitable" because Groove "would not have advanced draws to Vander Veur without his acknowledgement

that he would repay Groove any amounts he did not earn in commissions." Further, at oral argument before this court, Vander Veur conceded that he was overdrawn on his commissions and that he did not dispute Groove's accounting of the overdrawn commissions.

¶45  Nonetheless, Vander Veur argues that the district court's determinations were improper because he may be entitled to an offset if he prevails on his implied covenant claims below. He contends that the measurement of the benefit conferred is not possible in light of his pending breach of the implied covenant claims, asserting that whether Groove is equitably entitled to the draws "may only be determined upon resolution of [his] contractual claims." He also contends that Groove cannot prove that the draws he retained belong to Groove as a matter of equity where his entire case surrounded Groove's failure to deal with him in good faith.

¶46  But the district court dismissed each of Vander Veur's breach claims, with the result that the only remaining question before the court was whether Vander Veur would be unjustly enriched by keeping commissions to which he had no entitlement and for which, absent prevailing on appeal, there would be no offset. In these circumstances, the court did not err when it concluded that the undisputed facts demonstrated that Groove was entitled to summary judgment on its claim for unjust enrichment. And Vander Veur has not directed us to any authority establishing that it is impossible for a counterclaimant to prove entitlement—either in measurement or in equity—to its unjust enrichment claim until the plaintiff's claims have been fully resolved on appeal. On this basis, we therefore affirm Groove's unjust enrichment award.

CONCLUSION

¶47  For the reasons discussed above, we affirm the district court's order granting Groove summary judgment on its unjust

enrichment claim. However, we vacate the district court's grant of summary judgment in favor of Groove on Vander Veur's claims for breach of the implied covenant of good faith and fair dealing as to the six commissions and the Showtime bonus. We therefore remand for further proceedings.

———————